675 F.2d 1342
 James A. SWANN and Jonell Swann on behalf of themselves and
all others similarly situated, Appellees,
v.
GASTONIA HOUSING AUTHORITY; Dr. Cleveland Floyd, W. H.
Keith, Robert Haygood, Sarah P. Knowles and Al Pollack
Aldridge, Jr., each in his or her official capacity; Charles
R. Kaylor, in his capacity as Executive Director of the
Gastonia Housing Authority; Appellants,
and
William Huffstetler, Defendant.
 No. 81-1439.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 3, 1981.
Decided April 8, 1982.
 
 Graham C. Mullen, Gastonia, N. C. (Mullen, Holland & Cooper, P. A., Gastonia, N. C., on brief), for appellants.
 Leslie J. Winner, Charlotte, N. C. (Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P. A., Charlotte, N. C., on brief), for appellees.
 Before WINTER, Chief Judge, FIELD, Senior Circuit Judge, and CHAPMAN, Circuit Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 Defendants in a class action appeal from a judgment of the district court ordering that tenants in the Gastonia Section 8 Existing Housing Program not be evicted unless the Gastonia Housing Authority (GHA) has determined after a full-fledged hearing that good cause exists for the eviction. We affirm the portion of the district court's judgment holding (1) that the GHA must make a finding of good cause before approving the termination of a tenancy, (2) that a tenant in this program has a constitutionally protected expectation of remaining in his home in the absence of good cause for eviction, and (3) that the eviction constitutes state action. We disagree with the district court, however, that a full-fledged hearing before GHA is required. The statute which requires GHA to make a good cause determination does not go so far as to require a hearing, and the requirements of the due process clause are met by the hearing available in state court if the eviction is brought, as it now must be, for good cause.
 
 
 2
 Accordingly, we affirm in part and reverse in part and remand.
 
 I.
 
 3
 GHA is a public housing agency which administers a Section 8 Existing Housing Program in Gastonia, North Carolina, under the provisions of 42 U.S.C. § 1437f and 24 C.F.R. part 882. In 1978, the City of Gastonia acquired for demolition the home of James and Jonell Swann. The City fulfilled its statutory duty to provide the Swanns with relocation assistance by helping them obtain a Certificate of Family Participation from GHA. This certificate entitled the Swanns to a rent subsidy from GHA if they rented from a landlord who would participate in the Section 8 Existing Housing Program.
 
 
 4
 Such a landlord, William Huffstetler, was located. On September 15, 1978, the Swanns and Huffstetler entered into a one-year lease and GHA and Huffstetler entered into a Housing Assistance Payment Contract. The lease provides that either party may terminate at any time by giving thirty days' notice. A feature of the Section 8 Existing Housing Program in Gastonia is that leases are automatically renewed at the end of their terms unless this same termination procedure is followed.
 
 
 5
 In May 1979, Huffstetler brought a summary eviction action against the Swanns, but they obtained assistance from a legal aid clinic and Huffstetler dismissed the action because he was persuaded that adequate notice to vacate had not been given. In August 1979, Huffstetler informed the Swanns that their one-year lease would not be renewed and asked them to vacate by October 1. The Swanns believed that this was in retaliation for their use of the services of the legal aid clinic.
 
 
 6
 The version of § 1437f(d)(1)(B) then in effect required all Housing Assistance Payment Contracts to provide that "the agency shall have the sole right to give notice to vacate, with the owner having the right to make representation to the agency for termination of tenancy." See 42 U.S.C. § 1437f(d)(1)(B) (1976).[1] The regulation implementing that version of the statute, 24 C.F.R. § 882.215 (1981), provided that the landlord should send the notice to vacate to the tenant and a copy to the agency for its approval. The regulation also provided that the tenant may present his objections to the agency and that failure by the agency to act within twenty days constitutes approval of the termination. The Swanns requested GHA to disapprove the termination of their tenancy or at least to hold a hearing before making a decision. An informal conference was held, but GHA refused to deviate from its policy of allowing landlords to evict tenants at the end of their lease terms with or without good cause.
 
 
 7
 On September 22, the Swanns filed a class action founded on 42 U.S.C. § 1983 (1976), in which they alleged that their eviction violated the version of § 1437f then in effect and the due process clause of the Fourteenth Amendment. GHA, a number of its officers in their official capacities and Huffstetler were joined as defendants. The Swanns claimed to represent a class of all present and future participants in the Gastonia Section 8 Existing Housing Program. They sought only declaratory and injunctive relief. The landlord agreed to let the Swanns remain in their home pending the completion of the litigation. In early 1980, James Swann died and was dropped as a named plaintiff. The parties stipulated to the facts and filed cross motions for summary judgment.
 
 
 8
 On November 25, 1980, an order was entered granting the plaintiff's motion and denying the defendants' motion. The district court ruled that the old version of § 1437f required that GHA make a finding of good cause before approving the termination of any tenancy. With respect to the due process claim, the district court ruled that the old version of § 1437f and prevailing custom gave a tenant a constitutionally protected expectation of remaining in his home in the absence of good cause for eviction and that the eviction constituted state action. 502 F.Supp. 362.
 
 
 9
 At the end of the year, the class was certified. On April 8, 1981, a final judgment was entered. The court repeated its earlier conclusions and then, without further discussion, held that the process due is a hearing by GHA with the following elements: (a) the hearing should be conducted by an impartial decision maker who would issue a written decision, and (b) both the landlord and the tenant should have the right to counsel, the right to call witnesses, and the right to cross-examine the other side's witnesses. As a predicate to such a hearing, the judgment provided that the tenant would have to receive adequate notice of the alleged grounds for the termination of his tenancy.
 
 II.
 
 10
 We begin with the question of whether the statute requires that GHA make a finding of good cause before approving the termination of a tenancy. We think that it does.
 
 
 11
 The old version of § 1437f contained no explicit good cause requirement, but we think that one was implied by the language of § 1437f(d)(1)(B). That portion of the old version required all Housing Assistance Payment Contracts to provide that "the agency shall have the sole right to give notice to vacate, with the owner having the right to make representation to the agency for termination of tenancy." See 42 U.S.C. § 1437f(d)(1)(B) (1976). This provision was pointless if the housing authority was not to exercise some judgment before an eviction occurs.
 
 
 12
 The old version of § 1437f(d)(1)(B) was applicable only to Section 8 programs involving existing housing. A different provision governed Section 8 programs involving newly constructed or substantially rehabilitated housing, and it expressly required all Housing Assistance Payment Contracts to provide "that all ownership, management, and maintenance responsibilities, including the selection of tenants and the termination of tenancy, shall be assumed by the owner." 42 U.S.C. § 1437f(e)(2) (1976) (emphasis added). This language with respect to new or rehabilitated housing supports the conclusion that the particular approval scheme provided for in the old version of § 1437f(d)(1)(B) with regard to existing housing was adopted for a reason.
 
 
 13
 It certainly is possible that the agency was meant to do nothing more than determine that evictions covered by the provision met the requirements of state law and the lease. That, of course, is all that 24 C.F.R. § 882.215 (1981) provided for. It is difficult to imagine, however, why Congress would have thought it necessary for someone other than the state courts to make that determination. We think that the most reasonable interpretation of the statute is that it was meant to require the agency to determine that good cause existed before approving the termination of a tenancy.[2]
 
 
 14
 The district court gave no indication that it based the hearing requirement that it prescribed on the statute, and we think that was proper. If the agency must make a good cause determination, it follows necessarily that the landlord must state his reason for wanting to terminate the tenancy, and that the tenant must be informed of the reason and given an opportunity to respond. There is simply no basis in the statute, however, for requiring a full-fledged hearing like that ordered by the district court. Cf. S.Rep.No.871, 95th Cong., 2d Sess. (1978), reprinted in (1978) U.S.Code Cong. & Ad.News 4773, 4788 (a later Congress's expression of opinion that the statute required a good cause determination but not a hearing). We therefore must consider plaintiff's claim that the due process clause of the Fourteenth Amendment affords her a right to a full and complete hearing before GHA.
 
 III.
 
 15
 For the due process clause of the Fourteenth Amendment to dictate the procedure to be followed before a tenant is evicted, two conditions must be met. First, the tenant must have an expectation, rising to the status of a property interest, of remaining in his home in the absence of good cause for eviction. Second, an eviction must constitute state action.
 
 
 16
 We have already indicated that a tenant in this Section 8 Existing Housing Program is assured by statute that he will continue in occupancy in the absence of good cause for eviction. It is now beyond question that such statutory entitlements are protected by the due process clause. See Goldberg v. Kelly, 397 U.S. 254, 261-62, 90 S.Ct. 1011, 1016-17, 25 L.Ed.2d 287 (1970) (statutory entitlement to welfare benefits).[3]
 
 
 17
 We think also that the eviction constitutes state action. To begin, there is substantial continuing agency involvement in the tenancy. The government pays a major portion of each month's rent directly to the landlord and it will pay eighty percent of the rent for up to sixty days if the tenant vacates in violation of the lease. See 24 C.F.R. § 882.105 (1981). The landlord submits to significant regulation. See, e.g., id. § 882.109 (housing quality standards); id. § 882.111 (equal opportunity requirements). More importantly, GHA must determine on a case-by-case basis whether good cause exists for terminations of tenancies. We think that this government involvement is significantly more indicative of state action than that deemed insufficient to constitute state action in Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (state utility commission approved utility's general tariff, which included procedures for terminating service to customers). We also think that the government involvement in the present case is significantly more indicative of state action than the mere grant to all landlords of access to state eviction proceedings, which has generally been held insufficient to constitute state action. See, e.g., Weigand v. Afton View Apartments, 473 F.2d 545 (8 Cir. 1973); McGuane v. Chenango Court, Inc., 431 F.2d 1189 (2 Cir. 1970) (per curiam), cert. denied, 401 U.S. 994, 91 S.Ct. 1238, 28 L.Ed.2d 532 (1971).
 
 
 18
 Accordingly, we hold that the two conditions requisite to application of the due process clause are met and that the due process clause of the Fourteenth Amendment dictates the procedure to be followed before a tenant in this Section 8 Existing Housing Program may be evicted.
 
 IV.
 
 19
 The question of whether a hearing before GHA is required is governed, we think, by Joy v. Daniels, 479 F.2d 1236 (4 Cir. 1973). Dealing with a different quasi-public housing program from the one involved in the present case,[4] we held in Joy that, even though the lease provided that it was terminable at the expiration of the term, a tenant had a constitutionally protected expectation of remaining in his home in the absence of good cause for eviction, that an eviction constituted state action, but that any process that was due was adequately provided in the state eviction proceeding. We directed that the landlord be enjoined from attempting to evict the tenant except for cause.
 
 
 20
 The differences between various quasi-public housing programs may be crucial when a court must determine the scope of a tenant's constitutionally protected expectations and whether an eviction constitutes state action. As for whether the state eviction proceeding adequately provides the process that is due, however, we think that the present case raises a question that is identical to the one that was answered in Joy.
 
 
 21
 Joy arose in South Carolina. The eviction statute then in effect in that state provided that a "tenant may be ejected upon application of the landlord or his agent when (a) such tenant fails or refuses to pay the rent when due or demanded, (b) the term of tenancy or occupancy has ended or (c) the terms and conditions of the lease have been violated." S.C.Code § 41-101 (1962). In an earlier case, Johnson v. Tamsberg, 430 F.2d 1125 (4 Cir. 1970), we had held that where a tenant in a public housing project was evicted in South Carolina for violating the terms and conditions of her lease, the state eviction proceeding adequately provided any process that was constitutionally due, since the landlord was required to prove the truth of his accusations. Reasoning that the imposition of a good cause requirement recast all end-of-term evictions as evictions for violating the terms and conditions of the lease, we followed Johnson in Joy and held that the process that was constitutionally due would be adequately provided in the eviction proceeding in state court.
 
 
 22
 The present case arose in North Carolina. The eviction statute in effect in that state is indistinguishable in any relevant respect from the statute involved in Johnson and Joy. See N.C.Gen.Stat. § 42-26 (1976). The conclusion is thus inescapable, we think, that the process that is due in the present case is adequately provided by the state court in the eviction proceeding if, as we have held, the tenant may be evicted only for cause and not merely for expiration of term.
 
 
 23
 The plaintiff-appellees contend that the matter is governed instead by Caulder v. Durham Housing Authority, 433 F.2d 998 (4 Cir. 1970), cert. denied, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971). That case, like the present one, arose in North Carolina. It involved an eviction statute indistinguishable in any relevant respect from the one at issue in Joy and Johnson and the one at issue in the present case. See N.C.Gen.Stat. § 42-26 (1966).
 
 
 24
 In Caulder, the public housing authority held a summary proceeding at which it determined that the tenant should be evicted because of immoral acts allegedly committed by her children. The tenant denied the allegations, but was not allowed to cross-examine her children's accusers or even to know their names. The tenant then brought suit in federal court under 42 U.S.C. § 1983 (1964), claiming that she had been denied her constitutional right to due process in the summary proceeding just described. She asked that the public housing authority be enjoined from evicting her. Meanwhile, the public housing authority brought an end-of-term eviction proceeding in state court. The federal district court dismissed the tenant's action and she appealed.
 
 
 25
 The first issue on appeal was whether the anti-injunction statute, 28 U.S.C. § 2283 (1964), barred the tenant's action. We held that it did not. The "in-aid-of-its-jurisdiction" exception to the anti-injunction statute was applicable, we said, because the end-of-term eviction proceeding in state court did not give the tenant an adequate forum for her constitutional claim. See 433 F.2d at 1001-02.[5] The only issue in the state proceeding, we pointed out, was whether or not the tenant was holding over. See id. at 1002. Turning to the tenant's constitutional claim, we held that the tenant was entitled to a full-fledged hearing before being evicted on the basis of the allegations on which the public housing authority had relied. See id. at 1002-04.
 
 
 26
 The important thing to note for present purposes is that there was no claim in Caulder that a tenant could never be evicted except for good cause. In other words, there was no claim that the landlord should not be permitted to bring an end-of-term eviction proceeding in state court. All we held in Caulder was that when a public landlord determined to evict a tenant by reason of her family's conduct, the tenant was entitled to a hearing. Since it was uncontested that the public housing authority could avail itself of a summary end-of-term eviction proceeding in state court, it followed that the required hearing had to be held by the public authority itself.[6]
 
 
 27
 Joy and the present case are distinguishable from Caulder because we held in Joy, and we now hold in the present case, that the landlord can never avail himself of a summary end-of-term eviction proceeding in state court. The eviction proceeding in state court must be brought, if at all, for cause. That proceeding will provide the tenant with all the process that is due. A hearing before the housing agency therefore is not constitutionally required.
 
 
 28
 The judgment of the district court is affirmed in part and reversed in part and the case is remanded for the entry of a modified decree consistent with the views expressed herein.
 
 
 29
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 
 CHAPMAN, Circuit Judge, dissenting:
 
 30
 I do not think that 42 U.S.C. § 1437f or the Fourteenth Amendment require a showing of good cause prior to termination of a lease in the § 8 Existing Housing Program, therefore, I respectfully dissent.
 
 
 31
 The majority bases its holding that a good cause determination is required solely on the language of 42 U.S.C. § 1437f(d)(1)(B) that "the agency has the sole right to give notice to vacate, with the owner having the right to make representation to the agency for termination of the tenancy." The majority reasons that the agency's role is meaningless if its function was to do nothing more than determine that evictions applied for meet requirements of state law and the lease. I do not agree with this narrow view.
 
 
 32
 The proper function of the Public Housing Authority (PHA), as evinced by the regulations applying thereto, is to examine the sufficiency of the grounds for eviction under the terms of the lease. This is far from pointless. Participants in § 8 Existing Housing Projects are, on the whole, poorly suited to determine their own rights under a lease. Recognizing this fact, Congress placed the PHA between the tenant and the landlord as interpreter of the lease. By preventing terminations not proper under the lease the PHA protects the rights of tenants without the expense and embarrassment of defending an eviction action in state court. The proper interpretation of the statute is in my view that the PHA examine the sufficiency of the grounds for termination under the terms of the lease. This interpretation provides substantial protection to the tenant and protects the expectation of the private landlord that he will be able to take his property out of the program if he desires upon expiration of the lease. The majority would impose upon the landlord a mandatory renewal term, to which he has not agreed. His agreement with the PHA specifically provides that the term of his commitment shall be one year (the term of the lease).
 
 
 33
 The federal agency assigned the task of implementing § 8 programs has taken the view expressed in this dissent. Title 24 C.F.R. § 882.215 provides that the PHA shall examine the sufficiency of the grounds for eviction under the terms of the lease, imposing no requirement of a good cause showing. Moreover, 24 C.F.R. § 882.107 states that the lease term be for not less than one year nor more than three. The majority would apparently require a showing of good cause at the end of the third year of a three year lease making it extremely difficult for a landlord to ever remove his property from the § 8 Existing Housing Program.
 
 
 34
 For the reasons stated above, I would hold that a determination of good cause for termination is not implied by 42 U.S.C. § 1437f. For reasons hereafter stated I would also hold that such a determination is not required by the Fourteenth Amendment. Joy v. Daniels, 479 F.2d 1236 (1973) teaches that in determining whether a tenant has an expectation of renewal sufficient to create a "property interest" protected by due process "we must look to applicable statutes, governmental regulations and the custom and understanding of public landlords ...." As I stated above, it is my view that applicable statutes and regulations do not create an expectation of renewal. To the contrary, the language of the statutes and regulations create an expectation that lease terms will be honored. Moreover, the custom and understanding of a private landlord is different from that of a public landlord found in Joy.[1] The private landlord, and the private tenant as well, enter a lease expecting to be bound by its terms, especially terms dealing with duration, termination and renewal.
 
 
 35
 One purpose of the § 8 Existing Housing Program is to promote economically mixed housing, 42 U.S.C. § 1437f(a). That is, to inject qualified tenants into areas of single family dwellings rather than into massive apartment projects like the one involved in Joy. Because it is intended to put those who might not otherwise be able to afford it into areas of privately owned residences, the program should be governed by the rules and expectations applicable to private sector property owners and tenants. It is difficult to imagine how a § 8 tenant could have an expectation of renewal based on the applicable statutes, regulations, and understandings of private landlords. I would hold, therefore, that § 8 Existing Housing Tenants do not have a property interest in renewal of a lease and, therefore, that no good cause showing is mandated by the Fourteenth Amendment.
 
 
 
 [1]
 An amended version of § 1437f(d)(1)(B) is applicable to leases entered into on or after October 1, 1981. It provides for no agency involvement in the eviction but, unlike the version it supplanted, it explicitly requires that there be good cause for the termination of a tenancy. See Omnibus Budget Reconciliation Act of 1981, Pub.L.No. 97-35, § 326(e), 95 Stat. 357, 407 (1981). We express no opinion, of course, on the procedures to be followed for the termination of tenancies entered into on or after October 1, 1981
 
 
 [2]
 We note that several courts have declared illegal the procedure set out in 24 C.F.R. § 882.215 (1981), whereby the landlord sends the notice to vacate. See Jeffries v. Georgia Residential Finance Authority, 503 F.Supp. 610 (N.D.Ga.1980); Brown v. Harris, 491 F.Supp. 845 (N.D.Cal.1980). These courts deemed the old version of § 1437f(d)(1)(B) ("the agency shall have the sole right to give notice to vacate") to mean what it says. The present suit did not challenge the procedure set out in the regulation, and we express no opinion on the subject
 
 
 [3]
 Since we hold that the statute is sufficient to give a tenant a constitutionally protected expectation, we need not consider the validity of the district court's partial reliance on prevailing custom. See generally Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Joy v. Daniels, 479 F.2d 1236, 1241 (4 Cir. 1973)
 
 
 [4]
 The landlord in Joy received federal mortgage benefits under 12 U.S.C. § 1715l (d)(3) (1971) and federal rent subsidies under 12 U.S.C. § 1701s(b) (1971)
 
 
 [5]
 This question would not arise today. The Supreme Court has held that the "expressly-authorized-by-Act-of-Congress" exception to the anti-injunction statute applies to injunctions under § 1983. See Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). At the time Caulder was decided, however, this circuit had ruled to the contrary. See Baines v. City of Danville, 337 F.2d 579 (4 Cir. 1964) (in banc), cert. denied sub nom. Chase v. McCain, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965)
 
 
 [6]
 HUD responded to Caulder by requiring that all publicly-owned housing projects under its jurisdiction hold a full-fledged hearing before every termination. See U. S. Department of Housing and Urban Development, Grievance Procedure in Low Rent Public Housing Projects, HUD Circular RHM 7465.9 (Feb. 22, 1971)
 
 
 [1]
 Joy involved a project with a number of apartments. The present action covers one freestanding residence