**Ralph KENNEDY, Plaintiff,**

**v.**

**John BLOCK, Secretary Department of Agriculture, Gilliam Court, Ltd., et al., Defendants.**

**Civ. A. No. 84–0157–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

April 15, 1985.

38. *United States v. Geaney,* 417 F.2d 1116, 1120 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

39. Record at 460–65.

40. *See id.* at 460–65, 1486.

41. *Young,* 745 F.2d at 762; *Carson,* 702 F.2d at 361.

Jamie Aliperti, Client Centered Legal Services of Southwest Virginia, Castlewood, Va., for plaintiff.

U.S. Atty. Morgan E. Scott for DOA.

William J. Sturgill, Norton, Va., for Gilliam Court, Ltd.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case comes before the court on the plaintiff's Motion for Summary Judgment and Permanent Injunction. The material facts are not in dispute. As both parties have briefed their respective positions, the court will proceed with an examination of the plaintiff's request for a permanent injunction.

The plaintiff, Ralph L. Kennedy, lives in a rental apartment complex in Wise, Virginia. The apartment is owned and operated by defendant Gilliam Court, Ltd., a limited partnership which is based in Roanoke, Virginia. The plaintiff, whose apartment is

located in the complex referred to as Gilliam Court, states, and defendants do not deny, that the construction of Gilliam Court was subsidized by funds provided through the Farmers Home Administration's (FmHA) Section 515 program, 42 U.S.C. § 1485 *et seq.* The Section 515 program authorizes the Secretary of Agriculture to insure loans, made to entities such as Gilliam Court, Ltd., which are used to construct rental housing for moderate income persons in rural areas. In addition, under the FmHA's Section 515 program, the plaintiff qualified for and received a monthly rent subsidy from FmHA, as evidenced by the lease agreement between the plaintiff and defendant Gilliam Court. (Plaintiff's Exhibit # 2).

On August 7, 1984, plaintiff received a letter from Stewart Trinkle which stated that plaintiff's lease would terminate thirty days from the date of his receipt of the letter. Mr. Trinkle was an employee of Trinkle and Associates, Inc., the management agent for Gilliam Court, Ltd. and served as property manager for Gilliam Court Apartments. The letter alleges that plaintiff had continued, after having been warned, in a course of conduct which harassed both the management and the tenants of Gilliam Court. Plaintiff came before this court on September 22, 1984 and, with the aid of counsel, presented evidence and argument in support of a preliminary injunction preventing his eviction. That same day, this court entered an order which enjoined the defendants from instituting an eviction action in a state court of Virginia.

Plaintiff advances three legal theories as separate and independent grounds for the granting of a permanent injunction against the defendants: (1) that a 1978 amendment to the National Housing Act requires that FmHA implement a process whereby a tenant in a Section 515 apartment complex be given an administrative hearing prior to institution of an eviction action in a state court; (2) that FmHA's amendment of 7 C.F.R. § 1944.551 *et seq.* was arbitrary and capricious and thus in violation of the Administration Procedures Act; (3) that the

plaintiff's statutory and constitutional rights will be violated if FmHA is allowed to prosecute an eviction action in a Virginia General District Court.

## I. THE 1978 AMENDMENT TO SECTION 510 OF THE NATIONAL HOUSING ACT

Section 510 of the National Housing Act, 42 U.S.C. § 1471 *et seq.*, was amended in 1978 to read as follows:

In carrying out the provisions of this subchapter the Secretary shall have the power to—

issue rules and regulations which assure that applicants denied assistance under this subchapter or persons or organizations whose assistance under this subchapter is being substantially reduced or terminated are given written notice of the reasons for denial, reduction or termination and are provided at least an opportunity to appeal an adverse decision and to present additional information relevant to that decision to a person, other than the person making the original determination, who has authority to reverse the decision.

42 U.S.C. § 1480(g).

The plaintiff contends that 42 U.S.C. § 1480(g), as amended, was intended by Congress to require the Secretary of Agriculture to devise and implement an administrative hearing procedure as opposed to allowing FmHA or a borrower to resort initially to evictions via state court actions. FmHA did promulgate a final rule, effective September 24, 1979, which created an administrative hearing procedure for tenants of FmHA Section 515 housing projects who faced eviction. 7 C.F.R. § 1944.555 *et seq.* However, an amendment by way of a subsequent final rule with an effective date of December 19, 1983, allowed a borrower such as Gilliam Court, Ltd. to proceed with a termination of tenancy and eviction via judicial process under state law without first affording the tenant an administrative hearing. Assuming, *arguendo*, that the amendment process complied with the requirements of the Administrative Proce-

dures Act, the court will address the plaintiff's contention that 7 C.F.R. § 1944.551 *et seq.*, as amended December 19, 1983, conflicts with the Congressional mandate contained in the 1978 amendment (g) to 42 U.S.C. § 1480.

The plaintiff submitted as amendments to memoranda filed with the court certain parts of the published legislative history of the (g) amendment to 42 U.S.C. § 1480. Included is the conference committee's version of the bill, which states:

> The conferees expect that the Secretary will insure that such appeals procedure will include at least a written notice of the ability to appeal an adverse decision, an opportunity to appeal to a person who had no role in making the original determination and who has the authority to reverse the decision, an opportunity to inspect agency records relevant to the initial decision, to present additional relevant information and to receive the reviewing official's final decision with supporting reasons in writing. This procedure should apply to all persons and organizations, including tenants in FmHA financed dwelling units whose assistance has been denied, substantially reduced or terminated.

H.R. 95–1792, 95th Cong. 2nd Sess. 88 (1978) at 89, U.S. Code Cong. & Admin. News 1978, 4773, 4909.

The plaintiff argues that the committee report evidences Congressional intent to provide FmHA Section 515 tenants who face eviction with a prior administrative hearing. The plaintiff further argues that since FmHA borrower-landlords have always had to utilize state eviction procedures, Congress must have intended, by this amendment, to cause the FmHA to promulgate a process in addition to the process incident to state eviction action.

▬ The court is not persuaded that 42 U.S.C. § 1480(g) requires a prior administrative hearing in eviction situations. As this court has held previously, when a statute is unambiguous on its face, there is no need to consider the legislative history. *Cooper v. Tazewell Square Apartments,*

*Ltd.,* 577 F.Supp. 1483, 1487 (W.D.Va. 1984); *citing Brown v. Porcher,* 502 F.Supp. 946, 955–56 n. 17 (D.S.C.1980), *affirmed as modified,* 660 F.2d 1001 (4th Cir.1981). However, since the portion of the legislative history submitted to the court by the plaintiff undermines the plaintiff's interpretation of Congress' intent, it is proper to include a discussion of legislative history. The plaintiff's argument that, unless Section 1480(g) intended to create an administrative process for evictions, it was "merely redundant" in light of existing procedures ignores the fact that Section 1480(g) was intended to cover other situations in which the tenant's or applicant's assistance was "denied, substantially reduced, or terminated." The amendment was directed not only to evictions of current tenants, but also to the denial of benefits to applicants (i.e., prospective tenants), the borrower landlord's failure to maintain the rental premises properly, violations by the borrower-landlord of lease covenants and rules, unauthorized rent increases, etc. The plaintiff's argument is flawed in that it treats Section 1480(g) as if it were meant to apply only to evictions, which it clearly was not. Thus situations involving evictions can be omitted from the grievance appeal process without rendering Section 1480(g) redundant.

The plaintiff's concern with the legislative history also serves to draw attention to an issue which will be considered more thoroughly in a later section of this opinion: what procedural elements ought to be included in the hearing and appeal afforded by Section 1480(g)? Section 1480(g) as enacted into law in its final form by Congress, differs materially from the conferees' version as described in the portion of the legislative history provided above. The conferees' report included these elements which are not present in the actual amendment: (1) an opportunity to inspect relevant agency records and (2) the right to receive the reviewing official's final decision, along with supporting reasons, in writing. By not including these provisions expressly, given that they were presented

in the conference version of the bill which went to the full Congress, Congress clearly intended to exclude these two elements from the required procedure. The court is of the opinion that the statutory procedures required· by Section 1480(g) can be satisfied by an appropriate form of judicial action. Whether Virginia's eviction procedure satisfies the statutory requirements of Section 1480(g) will be considered together with the question of what procedures the statute requires in the third portion of this opinion.

## II. FmHA'S 1983 REVISION OF 7 C.F.R. § 1944.551 *ET SEQ.*

FmHA first promulgated a "Tenant Grievance and Appeal Procedure" on September 24, 1979. This included in the administrative hearing process those tenants which the borrower-landlord wished to dispossess from an apartment by eviction. These provisions were contained at 7 C.F.R. § 1944.551 et seq. (1979), 44 Fed. Reg. 54983 (1979). The objective of the regulation requiring a hearing was "... to insure the fair treatment of tenants (and applicants) while providing for an equitable manner by which borrowers can operate, maintain, and safeguard rental property." 7 C.F.R. § 1944.552, 44 Fed.Reg. 54983 (1979). The stated objective includes a point too easily overlooked, that the grievance and appeals process involves not only the rights and expectations of a tenant who faces eviction, but necessarily also involves and affects the rights and expectations of other tenants in the complex and of the borrower-landlord and his employees.

FmHA's final rule, 7 C.F.R. § 1944.551 *et seq.*, effective September 24, 1979, 44 Fed.Reg. 54983 (1979), reveals the difficulty an agency has when attempting to fulfill its duty to promulgate rules which comport with the Congressional delegation of rulemaking authority. In this instance Congress, by 42 U.S.C. § 1480(g), delegated to FmHA the responsibility of insuring procedural safeguards for individuals who either apply to receive, or receive, FmHA housing subsidies. A statement contained in the "Summary" preceding the September 1979 final rule represents FmHA's understanding of why an administrative hearing and appeal process was needed, and how the promulgated final rule was to address this need:

> The intended effect of this new regulation is to provide a means whereby a tenant can present a grievance against or appeal an FmHA borrower-landlord's proposed adverse action, such as termination of the lease and eviction. The appeal right also would extend to persons who have been denied admission to occupancy as tenants. This action is needed since at present the only grievance and appeal procedure in existence for tenants in FmHA-financed rental units and those denied admission to occupancy as tenants is the recourse available under the Fair Housing Act of Title VIII of the Civil Rights Act of 1968, which provides protection against discrimination because of race, color, religion, sex, marital status, or national origin. Legislation and public comment have indicated a need for such procedures.

7 C.F.R. Part 1944 (Summary, 44 Fed.Reg. 54983 (1979).

The Summary, in that it mentions the Fair Housing Act as the only grievance and appeals procedure available to both tenants and applicants, suggests that FmHA in 1979 was overlooking state judicial eviction actions as an appeal procedure available to tenants. The effect of the September 1979 rule was two-fold. In the case of applicants who were denied FmHA assistance or tenants who had grievances against the borrower-landlord, it created an administrative procedure, to be conducted by FmHA, which afforded such an aggrieved individual a hearing and right of appeal. This result was intended, and created a new procedure to safeguard rights which had previously been left unprotected. However, as to tenants which the borrower-landlord sought to evict, the new regulations first required that the FmHA grievance and appeal process be followed, and then, if a borrower-landlord prevailed, the

borrower was permitted to go forward with the eviction action in state court.

The recognition of a duplication of procedure was first made by FmHA in a revision to 7 C.F.R. Part 1944, effective October 27, 1980, 45 Fed.Reg. 70841 (1980). In a section preceding the 1980 revisions to the 1979 final rule, FmHA noted that a major concern evidenced in the comments received by the agency relating to 7 C.F.R. Part 1944 was that state laws established procedures to be followed in the case of tenant lease termination and eviction. FmHA's response to this concern with duplication was that

> [t]he procedures are intended to discourage evictions for other than material noncompliance with the lease or other good cause. Section 1944.554 has been amended to state that if the proposed eviction is due to the tenant's failure to make timely rental payments including any "grace period" under the lease, the tenant waives his/her rights under Tenant Grievance and Appeals Procedure unless the past-due rent is paid and rental payments are made on a timely basis while the appeal is in process. The procedure has also been amended to state that the procedure does not apply to eviction situations where a tenant's continued occupancy constitutes a threat to the health or safety of other residents or management employees (normally involving a violent action such as the use of firearms, arson, etc.) and judicial process is undertaken.

45 Fed.Reg. 70841 (1980).

The October 27, 1980 amendment is significant to the matters involved in the case *sub judice* in two distinct ways. First, it documents and dates recognition by FmHA of the availability of state procedures for terminations of leases and evictions. However, FmHA's response that the procedures were intended to discourage evictions except for good cause suggests that FmHA was concerned that borrowers might seek other than good-cause evictions, i.e., end of term evictions, and FmHA saw the prior administrative hearing as one means to prevent such evictions. The second signifi-

cant inference that can be drawn from the amendment is FmHA's recognition of the duty it had to three separate groups of individuals. Certainly FmHA had and recognized a duty, as delegated by Congress via 42 U.S.C. § 1480(g), to tenants faced with lease terminations and evictions which required FmHA to insure that borrower-landlords observed certain procedural steps, in the course of both lease terminations and evictions, designed to safeguard the rights of tenants. However, the October 27, 1980 amendment also shows FmHA's recognition of the need to balance its duty to tenants facing eviction with the rights of borrower-landlords and other tenants in the apartment complex. The 1980 amendment added economic protection for borrower-landlords by allowing resort to state judicial actions when a tenant was in default on rent. Also, FmHA waived the administrative hearing when a tenant was considered to pose a physical threat to other tenants or management employees.

FmHA was apparently still dissatisfied with 7 C.F.R. Part 1944, when on April 22, 1982, it issued notice of a proposed rule which would remove from the grievance process all eviction actions which were governed by state law. 47 Fed.Reg. 17300 (1982). The purpose given for the proposed amendment was as follows:

> The intended effect is to remove from the grievance process all eviction actions which are governed by State law ... These changes resulted from objections from the FmHA personnel and owners and managers of FmHA projects that the existing grievance procedure required by this regulation is difficult and burdensome to administer.

47 Fed.Reg. 17300 (1982).

The notice of the proposed rule required that comments to be received on or before June 21, 1982.

The 1983 revision to 7 C.F.R. Part 1944, which plaintiff contends was done arbitrarily and capriciously by FmHA in violation of the Administrative Procedures Act (APA), was published as a Final Rule in Volume 48, Number 244 of the Federal Register

beginning on page 56175 (December 19, 1983). The amendment allowed a borrower-landlord to institute a termination of tenancy and eviction action in state court without requiring the borrower-landlord to provide an administrative hearing to the tenant. The "intended effect (was) to reduce the burden of a duplication of effort in determination of tenancy and eviction process and to provide for the prompt resolution of the borrower-tenant disputes." 48 Fed.Reg. 56175 (1983).

The plaintiff does not allege that FmHA failed to follow the requisite procedural steps in the rule-making process. FmHA did publish a notice of a proposed change, held the record open for public written comment, conducted an open hearing on the proposed change in Washington, D.C., and published a final rule together with relevant comments. Plaintiff does contend, however, that the final rule promulgated by FmHA lacks a rational connection to the facts which Congress intended FmHA to consider.

■ The analysis of an agency's action necessarily begins by establishing the appropriate standard of review. As stated earlier, the APA dictates FmHA's rule-making process. The appropriate standard of review, as established by the APA and the Supreme Court, is that an agency's promulgated rule must be set aside if found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 2865, 77 L.Ed.2d 443 (1983); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971); *Bowman Transportation, Inc. v. Arkansas Best Freight Systems, Inc.*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). Plaintiff advances three grounds as separate bases for holding FmHA's actions arbitrary and capricious: (1) FmHA relied on factors which Congress did not intend for it to consider; (2) FmHA failed to examine all relevant data; (3) FmHA failed to make a

considered evaluation of alternatives to the selected amendments.

Plaintiff argues that Congress did not "intend for FmHA to instantly capitulate to complaints by agency personnel and administrators that the grievance procedure is burdensome and difficult to administer." Plaintiff characterizes the amendment as a sign of capitulation by FmHA to the borrowers' demands, which plaintiff argues Congress did not intend for FmHA to consider. The Congressional delegation of authority to FmHA, contained in 42 U.S.C. § 1480(g), makes no reference to what FmHA was to consider in making the rule which implemented Section 1480(g). Congress does include in many statutes by which it delegates rule-making authority instructions as to what shall be considered in making the rule. The National Traffic and Motor Vehicle Safety Act of 1966, for example, directed the Secretary of Transportation to consider "relevant available motor vehicle safety data," whether the proposed standard "is reasonable, practicable and appropriate" for a particular type of motor vehicle, and the extent to which such standard will contribute to carrying out the purposes of the Act. 15 U.S.C. § 1392(f)(1), (3), (4), as cited in *Motor Vehicle*, 103 S.Ct. at 2862.

■ In the absence of Congressional direction as to what elements are to be considered in promulgating the rule, the presumption is that Congress is entrusting the decision as to what to consider to the hands of the agency in deference to agency expertise. Such is the case with 42 U.S.C. § 1480(g), as there is included in § 1480(g) no Congressional directive regarding consideration of relevant elements. The comments published along with the 1980 amendment to 7 C.F.R. Part 1944 illustrate that FmHA was considering not only the landlord's concerns, but also FmHA employees, tenants facing evictions, and other tenants in a housing complex. FmHA was acting properly in considering the rights of all persons affected by the amendment. The plaintiff would have FmHA consider only the interests of the tenant facing evic-

tion, which clearly is not FmHA's duty, nor is it in the best long-term interest of all FmHA Section 515 tenants.

The plaintiff argues that FmHA failed to examine relevant data prior to making its decision to amend 7 C.F.R. Part 1944. This contention is untenable in light of the discussion published along with the amendment. *See* Discussion of Comments, 47 Fed.Reg. 56176 (1983). The comments suggest that FmHA weighed the protection of tenants' statutory and constitutional rights against the needs of landlords, tenants, and FmHA employees in deciding how to deal with tenants who are in material non-compliance with their leases.

Included in the materials submitted to the court by the plaintiff is a copy of a report done in 1981 by a student at American University about FmHA's Grievance and Appeals Procedures. Plaintiff argues that the report "contradicts virtually every conclusion reached by the agency in promulgating the revised procedures." The court would state initially that the relevance and weight to be accorded this report, for purposes of reviewing the agency's action, is minimal since the report is not among the matters which the APA requires an agency to consider. The APA provides the procedure which an agency must follow in the rule-making process, including directions as to what an agency is to consider:

> After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule-making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

5 U.S.C. § 553(c).

Assuming, *arguendo,* that the report which plaintiff relies upon so heavily was submitted in response to the notice of the proposed rule change (plaintiff does not make such an assertion), the agency's action does not suggest that the report or the material which it contained was not considered. The report noted that of twelve proposed eviction cases which proceeded to the hearing stage, six were resolved in favor of the tenant. Thus, plaintiff argues, without the administrative hearing, six tenants would have been unjustly evicted. Plaintiff further argues that the administrative hearing was a cheaper process than state court eviction. Figures included in the report are not broken down so that the cost of eviction hearings and appeals can be determined. However, it was reasonable for FmHA to decide to avoid the duplication caused in the eviction process by the administrative hearing by instead relying solely upon traditional state eviction proceedings to safeguard the rights of tenants who faced unwarranted evictions. Furthermore, since the state proceedings represented a fixed cost in that they were required whether there was a duplicate FmHA proceeding or not, discontinuing the FmHA proceeding represented an immediate savings to borrowers and FmHA. The foregoing is not intended by the court to "... supply a reasoned basis for the agency's action that the agency has not given," *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947), but suggests that the raw data contained in the report will support conclusions opposite to those reached by the report's author and subsequently adopted by the plaintiff.

■ Plaintiff faults FmHA and seeks to have the amendment set aside because of the alleged failure of FmHA to consider alternatives to the removal of evictions from the grievance and appeals process. However, published with the proposed rule in April of 1982 was the following summary of FmHA's consideration of alternatives to the amendment:

> The alternatives to issuance of the proposed regulations which were considered included not changing existing regulations and allowing each FmHA State Office to establish procedures consistent with local practices. These alternatives were rejected because they did not promote efficiency in Agency operations,

nor assure long term compliance with the objectives for which the FmHA assistance was provided. Moreover, they could lead to a proliferation of regulations and requirements inconsistent between States and regions, causing confusion to the public, especially to those borrowers with operations in more than one jurisdiction. On this basis, the Agency has determined that the chosen alternative maximizes the net benefit to society at the lowest cost.

47 Fed.Reg. 17300 (1982). The court is of the opinion that FmHA's treatment of alternatives as set out above satisfies the requirements of the APA. The alternatives were concisely stated, the problems they created and shortcomings they possessed were described, and the rejection was justified on the basis of net benefit to society.

The plaintiff has urged the court to adopt the reasoning of the Supreme Court which is set forth in *Motor Vehicle,* 103 S.Ct. at 2856. This court is of course bound by the reasoning of the Supreme Court, and has applied it to the facts in the present case. FmHA's rule-making actions, under the *Motor Vehicle* analysis, withstand challenge under the arbitrary and capricious standard. The Supreme Court stated its approval of the following interpretation of the arbitrary and capricious standard:

> ... A reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute ....

*Id.* 103 S.Ct. at 2866.

This court holds that FmHA's actions in promulgating the 1983 changes to 7 C.F.R. Part 1944 were not arbitrary and capricious. The amendment was rational as it was an attempt to allow better administration of FmHA dwelling complexes while protecting the rights of tenants who faced evictions. The court finds that the agency's decision was based on a consideration of relevant factors and contained no clear error of judgment. *See Motor Vehicle,* 103 S.Ct. at 2865; *Citizens,* 401 U.S. at 416, 91 S.Ct. at 823; *Bowman,* 419 U.S. at 285, 95 S.Ct. at 441.

Furthermore, this court would note that the initial agency action, evidenced by the promulgation in 1979 of 7 C.F.R. Part 1944 in response to 42 U.S.C. § 1480(g), and the evolution of Part 1944 via the rule-making process as evidenced by FmHA's subsequent revisions, represent an agency's attempt to arrive at a rule which both complies with the Congressional delegation of rule-making authority and serves the beneficiaries of the agency. 7 C.F.R. Part 1944 has been amended twice since its promulgation in 1979. To amend a rule dealing with procedural protection for low income tenants twice within a four year period is not excessive. The court realizes that changes to the eviction process are very important to FmHA Section 515 tenants, and should only be undertaken with appropriate deliberation and concern for those affected. The history of 7 C.F.R. Part 1944 evidences the agency's good faith attempt to satisfy its duty to Congress and to all the people the agency was created to serve.

### III. DUE PROCESS PROTECTIONS UNDER THE CURRENT EVICTION PROCEDURES

In this third section of the court's Opinion, the 1983 revisions to 7 C.F.R. Part 1944 will be analyzed to determine whether they afford plaintiff protection of the rights guaranteed by the statute and by the United States Constitution.

Plaintiff contends that 42 U.S.C. § 1480(g) requires FmHA and borrower-landlords to follow certain procedures in the course of an eviction. Section 1480(g) provides three procedural safeguards which enure to tenants facing evictions: (a) written notice of the reasons for eviction or termination, (b) the opportunity to appeal an adverse decision to someone other than the person making the original decision, who has the power to reverse the original decision, and (c) the right to present additional relevant information to the person hearing the appeal. 42 U.S.C. § 1480(g).

The court must look initially to the language of the statute to determine whether Congress intended the requirements of 42 U.S.C. § 1480(g) to be mandatory. The statute is worded as follows: "In carrying out the provisions of this subchapter, *the Secretary shall have the power to*—(g) issue rules and regulations ..." 42 U.S.C. § 1480(g) (emphasis added). The statute is not in the mandatory language which would substantiate a claim that Congress meant to require FmHA to implement the contents of paragraph (g). Instead the language represents only a grant of rulemaking authority to FmHA. Congress, by using the language "shall have the power to issue," was committing to the agency the final decision of whether such provisions were necessary and appropriate, and if so, the authority to devise a procedure to implement the provisions.

Assuming, *arguendo*, that Congress intended to require FmHA to insure that the procedural components of Section 1480(g) were followed, the inquiry would become whether FmHA's eviction procedures, utilizing Virginia's judicial eviction action, contained the requisite procedural components of Section 1480(g). Congress established the minimum process to be provided FmHA Section 515 tenants in Section 1480(g). That section required written notice and the opportunity to appeal and present additional evidence to someone having the power to reverse.

FmHA's current process for terminations and evictions requires the borrower to comply with FmHA regulations and state judicial eviction procedures. The FmHA regulation governing evictions, as amended December 19, 1983, provides:

*Notice of Termination of Tenancy and Eviction.*

Notification of termination of tenancy and eviction is to be handled in accordance with Paragraph XIV B of Exhibit B of Subpart C of Part 1930 of this Chapter and according to State or local laws. *Termination of Tenancy and Eviction by Judicial Action as Proscribed by State or Local Law.*

Termination of tenancy and eviction must be based on material violation of the lease terms or other good cause as determined by the borrower or the project manager in accordance with Paragraph XIV A of Exhibit B of Subpart C of Part 1930. The borrower shall not evict any tenant except by judicial action pursuant to State or local law and in accordance with the requirements of this Subpart.

7 C.F.R. § 1944.553(e), (f). Part 1930, Subpart C, Exhibit B, Paragraph XIV states in pertinent part:

B. *Notice of Termination*

1. ... [T]enants will be given prior notice of eviction according to State or local law. The notice must: a. Refer to relevant provisions in the lease. b. State the reasons for termination with enough specificity to enable the tenant to prepare a response. c. State that the tenancy is terminated on a date specified. d. Advise the tenant ... that the borrower may seek to enforce the termination only by bringing a judicial action, at which time the tenant may present a defense.

The Virginia judicial procedure for evictions, which is an action for unlawful entry and detainer, provides that if a landlord ... thinks a tenant is unlawfully detaining an apartment, the landlord may present a sworn statement of facts authorizing the removal of the tenant to a magistrate, clerk or judge of a General District Court. Then the official shall issue a summons against the tenant and have it served upon him. After the service is returned, the judge of the General District Court hears and decides the case.

*Cooper v. Tazewell Square Apartments, Ltd.*, 577 F.Supp. 1483, 1489 (W.D.Va. 1984).

The process which a borrower-landlord must follow to evict a Section 515 FmHA tenant is sufficient to protect the tenant's due process guarantees established by Section 1480(g). FmHA's own regulations require the borrower to provide the tenant with written notice of the reasons for the

tenant's termination and eviction. Part 1930, Subpart C, Exhibit B, Paragraph XIV. The judge of the General District Court hears the eviction on first impression and his decision is appealable by right to a Virginia Circuit Court. Va.Code § 8.01–129. In a situation where the borrower has prevailed in General District Court and the case is on appeal before the judge of the Circuit Court, the tenant has the right to present additional evidence and the judge may reverse the decision of the General District Judge.

The plaintiff argues that the case *sub judice* should be controlled by this court's ruling in *Cooper v. Tazewell Square Apartments, supra.* In *Cooper*, this court held that an action for unlawful entry and detainer (eviction) in General District Court did not provide an adequate legal remedy, and thus did not preclude the award of injunctive relief, to a plaintiff who alleged non-compliance with the regulations contained at 7 C.F.R. § 1944.556 by an FmHA borrower who had attempted to evict the plaintiff. This court held in *Cooper* that the defendant borrower had failed to provide an impartial decision-maker at the hearing level, as required by then existent FmHA regulations. In addition, this court held that

> An action in general district court is no substitute (for a hearing before an impartial decision-maker) ... the borrower must afford the tenant the protections set forth in the Tenant Grievance and Appeals Procedure before resorting to state action.

*Id.* at 1489.

The holding in *Cooper* is not dispositive of the issue presented in this case because *Cooper* was decided on the basis of 7 C.F.R. Part 1944 as it read prior to the December 19, 1983 revisions. When, in *Cooper*, the borrower attempted to resort to state action without having complied with FmHA regulations, the effect was to deny the tenant procedural guarantees created in the FmHA regulations themselves. The General District Court procedure did not satisfy the *then existing* FmHA internal regulations, thus it was an inadequate legal remedy for the deprivation of procedural guarantees created by the FmHA regulations. The court has found that these regulations were properly amended in December, 1983 to remove tenancy termination and evictions from the administrative hearing process. Accordingly, the court's reasoning in *Cooper* is not applicable to this case.

The plaintiff contends that an administrative grievance hearing must be afforded him, prior to his eviction as required by Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Court of Appeals for the Fourth Circuit has said:

> For the due process clause of the Fourteenth Amendment to dictate the procedure to be followed before a tenant is evicted, two conditions must be met. First the tenant must have an expectation, rising to the status of property interest, of remaining in his home in the absence of good cause for eviction. Second, an eviction must constitute state action.

*Swann v. Gastonia Housing Authority*, 675 F.2d 1342, 1345–1346 (4th Cir.1982).

FmHA regulations create an expectation of continued tenancy which rises to the level of a property interest. According to 7 C.F.R. § 1944.553(n), "Termination of tenancy and eviction must be based on material violation of the lease terms or for other good cause .... It is now beyond question that such statutory entitlements are protected by the due process clause." *Id.* at 1346, *citing Goldberg v. Kelly*, 397 U.S. 254, 261–262, 90 S.Ct. 1011, 1016–1017, 25 L.Ed.2d 287 (1970). The proposed eviction of the plaintiff also involves state action. Utilizing criteria employed by the Fourth Circuit in *Swann*, this court finds a "substantial continuing agency involvement in the tenancy." *Swann*, 1346. FmHA subsidized the initial construction costs of the apartment complex and pays a substantial portion of the plaintiff's monthly rent ($138 of the total $215) directly to the borrower defendant. The borrower agrees to be bound by FmHA regulations which govern significant aspects of the operation of the apartment complex, includ-

ing the procedures for termination of tenancies and evictions. Most significantly, FmHA sets the guidelines which a borrower or project manager must follow to determine if good cause exists for eviction.

The court finds that the plaintiff has a reasonable expectation of continued occupancy in Gilliam Court, and that the borrower defendant's intended eviction would constitute state action. Therefore the question of what process is due plaintiff prior to the eviction is governed by the Due Process Clause of the Fourteenth Amendment.

■■■ When the Court of Appeals for the Fourth Circuit addressed the issue now before this court, the Fourth Circuit held that the procedures incident to an eviction by state judicial process are adequate to protect the due process rights of a public housing tenant, provided the eviction is for good cause and not simply because the lease has expired (an end of term eviction). *Swann v. Gastonia Housing Authority*, 675 F.2d 1342, 1347–1348 (4th Cir.1982). In *Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir.1970), *cert. denied*, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971), the court upheld an injunction preventing an eviction because the state court eviction process did not afford due process protection where the eviction was prosecuted on grounds of the tenant's "continuing in possession of demised premises after her term had expired." *Id.* at 1002. However, it is well settled that due process rights of a tenant in a public housing project are protected in a state court eviction action provided the eviction is for good cause, which must be proved by the landlord during the state proceedings.[1] *Swann v. Gastonia Housing Authority*, 675 F.2d 1342 (4th Cir.1982); *Joy v. Daniels*, 479 F.2d 1236 (4th Cir.1973); *Johnson v. Tamsberg*, 430 F.2d 1125 (4th Cir.1970).

The FmHA regulations require that the borrower make a determination of the existence of good cause to evict prior to the institution of state eviction procedures. Plaintiff does not allege that the borrower was attempting to evict him on the basis of his presence in the apartment after the lease expired. The facts before the court suggest that the defendant's eviction of the plaintiff is based on a good faith belief by the defendant that good cause does exist to evict. The state eviction action will provide the forum to test the adequacy of the factual allegations to determine whether the allegations, if proven, amount to good cause to evict. This court expects the eviction action in state court to be either based on material violations of the lease provisions or for good cause.

In accordance with the reasoning above, the motion for permanent injunction is denied, the temporary injunction is dissolved and the case is stricken from the docket.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.

---

1. The court notes that FmHA's present eviction process insures only eviction for cause. Accordingly, the reasons stated by FmHA for the inclusion of evictions in the administrative hearing process, "... to discourage evictions for other than material non-compliance with a lease or

other good cause," is no longer a true concern. Instead, FmHA has insured only "good cause" evictions by process of a prior determination by the borrower of good cause, which is tested in state court as "good cause" must be the basis of the eviction.