1997 SD 41

**S.B. PARTNERSHIP, d/b/a Canyon Lake Plaza Estates, Plaintiff and Appellee,**

v.

**Vernaline GOGUE, Defendant and Appellant.**

No. 19789.

Supreme Court of South Dakota.

Argued Feb. 19, 1997.

Decided April 16, 1997.

Rehearing Denied May 7, 1997.

James F. Margadant of Seiler & Margadant Law Firm, Rapid City, for plaintiff and appellee.

Scott D. McGregor of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] Vernaline Gogue was evicted from an apartment owned by S.B. Partnership d/b/a Canyon Lake Plaza Estates. Her federally subsidized lease required written notice containing specific grounds for termination. Are state court eviction proceedings suffi-

cient to provide the notice and due process protections required by federal law? We conclude the state unlawful detainer action fulfilled federal mandates because the amended complaint set forth adequate grounds, and Gogue was afforded a hearing before eviction.

## Facts

[¶ 2.] Gogue and Canyon Lake entered into a lease agreement on January 3, 1994, and a lease addendum on February 7, 1994, both pursuant to the Section 8 Housing Certification Program of the Department of Housing and Urban Development (HUD), which provided rental assistance to Gogue. 42 USC § 1437f. Pennington County Housing and Redevelopment Commission, the local Public Housing Authority (PHA) for HUD, administered the program and certified individuals to receive assistance.

[¶ 3.] Under this lease, Gogue and her family lived in an apartment in the multi-unit Canyon Lake Plaza Estates in Rapid City. The total monthly rent was $520, with Gogue being responsible for $351. PHA paid the remainder. The lease was for an indefinite term, as the addendum provided:

> The term of the lease shall begin on January 3, 1994, and shall continue until: (1) a termination of the Lease by the Landlord in accordance with paragraph (H) of this section, (2) a termination of the Lease by Tenant in accordance with the Lease or by mutual agreement during the term of the Lease, or (3) a termination of the Housing Assistance Payments Contract by the PHA.

Canyon Lake was empowered to terminate the lease under the dictates of paragraph H of the addendum, which stated:

> (1) The Landlord shall not terminate the tenancy except for:
>
> (i) Serious or repeated violation of the terms and conditions of the Lease;
>
> (ii) Violation of Federal, State, or local law which imposes obligations on a tenant in connection with the occupancy or use of the dwelling unit and surrounding premises; or
>
> (iii) Other good cause. However, during the first year of the term of the lease, the Landlord may not terminate the tenancy for "other good cause" unless the termination is based on malfeasance or nonfeasance of the Tenant Family.
>
> (2) The following are some examples of "other good cause" for termination of tenancy by the Landlord:
>
> (i) Failure by the Tenant Family to accept the offer of a new Lease in accordance with paragraph (K) of this section;
>
> (ii) A Tenant Family history of disturbance of neighbors or destruction of property, or of living or housekeeping habits resulting in damage to the unit or property;
>
> (iii) Criminal activity by Tenant Family members involving crimes of physical violence to persons or property;
>
> (iv) The Landlord's desire to utilize the unit for personal or family use or for a purpose other than a use as a residential rental unit; or
>
> (v) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, desire to rent the unit at a higher rental).
>
> This list of examples is intended as a non-exclusive statement of some situations included in "other good cause" but shall in no way be construed as a limitation on the application of "other good cause" to situations not included in the list. The Landlord may not terminate the tenancy during the first year of the Lease for "other good cause" (see paragraph (H)(1)(iiv)[sic] for the grounds stated in paragraph (H)(2)(i), (H)(2)(iv) of this section. [sic]

On December 7, 1994, Canyon Lake wrote Gogue informing her of its intent not to renew the lease as of January 31, 1995. Given the language of the lease addendum which provided for an indefinite term, however, the lease would not expire on that date.

[¶ 4.] On January 9, Canyon Lake notified Gogue a second time, by letter taped to her door, that as of January 31, 1995, her lease would be terminated. Neither this letter, nor the December letter, gave reasons for Canyon Lake's decision. Later Canyon Lake revealed it had several reasons for non-renewal. One was that, during 1994, it secured

extensive financing to renovate the entire structure, so all leases were gradually being terminated. In addition, Canyon Lake received complaints from other tenants about the loud and disorderly behavior of Gogue's children. The police were called to the complex in one instance, when one of her children was in an altercation with another child who had a knife. At one point, she permitted a 100–pound bag of potatoes to rot in her kitchen, prompting neighbor complaints about the stench. She had also been late in rental payments and was responsible for damage to the property, including the door to the apartment which, due to the activities of her children, was off its hinges.

[¶ 5.] Despite the termination notices, Gogue continued to live at Canyon Lake, because the lease term was continued on a month-to-month basis. On February 27, she was advised through her attorney her lease would not be continued past April 1, 1995. On April 11, Canyon Lake served on Gogue a three-day notice to vacate and, after she failed to move out, commenced an unlawful detainer action on April 17th pursuant to SDCL 21–16, et seq. By stipulation, Canyon Lake was allowed to amend its complaint to include the following:

> Plaintiff did not offer to renew Defendant's lease on the premises due to Plaintiff's plans to remove the apartment from its rental units to undertake renovations, because of the complaints Plaintiff had received concerning the conduct of Defendant's children, and because of Defendant's failure or neglect in maintaining the rental premises.

[¶ 6.] At trial, the magistrate found the eviction was proper on the grounds Canyon Lake was undertaking renovations and because the problems with Gogue's tenancy constituted "good cause." On appeal, the circuit court held Canyon Lake failed to give due notice to Gogue under federal law, as the two letters sent to her included no reasons for terminating her lease. However, the court found the specificity of the amended complaint cured the notice deficiencies. It also ruled a lease termination for renovation requires a ninety day notice under federal law, a requirement not met here. According-

ly, the magistrate's decision on that ground was error. On the other hand, the circuit court agreed the other problems with Gogue's tenancy were enough to constitute "good cause." Noting that HUD regulations merely dictate that landlords give notice according to state and local law, the court found the notice period and grounds for termination sufficient.

[¶ 7.] Gogue appeals, offering two issues for our consideration: (1) whether the notices given her were legally sufficient, and (2) whether Canyon Lake had good cause to terminate her tenancy.

### Standard of Review

[¶ 8] We give no deference to the circuit court's conclusions of law, as we review those decisions under a de novo standard. *Central Monitoring Serv. v. Zakinski*, 1996 SD 116, ¶ 17, 553 N.W.2d 513, 517 (citing *Centrol, Inc. v. Morrow*, 489 N.W.2d 890, 893 (S.D.1992)). Conversely, we review findings of fact under the more lenient clearly erroneous standard. *Shedd v. Lamb*, 1996 SD 117, ¶ 17, 553 N.W.2d 241, 244. We will not overturn fact findings unless we are definitely and firmly convinced a mistake has been made. *Cordell v. Codington County*, 526 N.W.2d 115, 116 (S.D.1994).

### Analysis

[¶ 9.] The Section 8 rental assistance program is part of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, 42 USC § 1437 et seq. In Arnold Murray Constr. v. Wittrock, we highlighted the purpose of this program:

> Congress has declared it the policy of the United States "to promote the general welfare of the Nation by employing its funds and credit ... to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income[.]" 42 USCS § 1437.

487 N.W.2d 33, 36 (S.D.1992). Several programs, including those with public and private housing rental assistance supplements,

are encompassed in § 1437, each carrying different notice and hearing requirements.

■ [¶ 10.] Gogue argues the notice given her was insufficient in both content and timing. Undoubtedly, she had a protected property interest in the tenancy, as termination and subsequent eviction proceedings implicate state action. *Swann v. Gastonia Housing Authority,* 675 F.2d 1342 (4th Cir.1982). To determine whether the notice Gogue received was sufficient, we must trace through the statutory and regulatory web governing Section 8 Housing, including the various notice requirements.

■ [¶ 11.] Low-income housing assistance is governed by 42 USC § 1437f. The notice provision of this statute provides:

(B)(i) the lease between tenant and the owner shall be for at least one year or the term of such contract, whichever is shorter, and shall contain other terms and conditions specified by the Secretary;

(ii) the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause;

(iii) provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenant [sic], any criminal activity

that threatens the health, safety, or right to peaceful enjoyment of their residences or persons residing in the immediate vicinity of the premises, or any drug-related criminal activity on or near such premises, engaged in by a tenant of any unit, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy; and

(iv) **any termination of tenancy shall be preceded by the owner's provision of written notice to the tenant specifying the grounds for such action.**

42 U.S.C. § 1437f(d)(1)(B) (1990 & 1996 Supp.)(emphasis added). A showing of "good cause" is not only a statutory prerequisite for termination, but also a requirement of due process. *Mitchell v. United States Dept. of Housing & Urban Development,* 569 F.Supp. 701, 710 (N.D.Cal.1983). Canyon Lake admits it failed to specify any "good cause" reasons in the two termination letters and in its notice to vacate.

[¶ 12.] The circuit court found, in agreement with the magistrate, that the eviction proceedings satisfied Gogue's due process rights. Other § 1437 programs require an administrative hearing to withdraw benefits, but Section 8 rental assistance under § 1437f is not one of them.[1] In fact, federal regula-

---

1. For instance, the governing provision of many of the Housing Act programs is 42 USC § 1437d. Section 1437d(k) provides an administrative grievance procedure for actions of a PHA. It also provides, in part:

> For any grievance concerning an eviction or termination of tenancy that involves any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises of other tenants or employees of the public housing agency or any drug-related criminal activity on or near such premises, the agency may (A) establish an expedited grievance procedure as the Secretary shall provide by rule under section 553 of title 5, United States Code, or (B) exclude from its grievance procedure any such grievance, in any jurisdiction which requires that prior to eviction, a tenant be given a hearing in court which the Secretary determines provides the basic elements of due process.... Such elements of due process shall not include a requirement that the tenant be provided an opportunity to examine relevant documents within the possession of the public housing agency. The agency shall provide the tenant with a reasonable opportunity prior to

the hearing or trial, to examine any relevant documents, records, or regulations directly related to the eviction or termination.

42 U.S.C. § 1437d(k) (1990 & 1996 Supp.). Therefore, administrative grievance procedures for terminating tenancies under certain programs can be created by HUD. However, 42 U.S.C. § 1437f, the section at issue here, specifically exempts the low-income rental assistance program from the jurisdiction of 42 U.S.C. § 1437d: "Sections (5)(e) and (6) [42 USCS §§ 1437c(e) and 1437d], and any other provisions of this Act which are inconsistent with the provisions of this section shall not apply to contracts for assistance entered into under this section." 42 U.S.C. § 1437f(h). Furthermore, under the rental assistance program itself, the regulations require that PHAs must provide an informal review or hearing when it denies assistance. 24 CFR § 882.216; *see, e.g., Colvin v. Housing Auth. of Sarasota,* 71 F.3d 864, 867 (11th Cir.1996). Conversely, the CFR that controls private landlords' duties under the assisted tenancy program, 24 CFR § 882.215, affords no such procedure.

tions governing assisted tenancy provide an owner may only terminate and evict a tenant through state court action: "The Owner may evict the tenant from the unit only by instituting a court action. The Owner must notify the PHA in writing of the commencement of procedures for termination of tenancy, at the same time that the Owner gives notice to the tenant under State or local law." 24 CFR § 882.215(c)(4) (1994 & 1995).[2] These regulations furnish no administrative procedures for owner-terminated leases, but in fact require state court action to fulfill the process.

[¶ 13.] Federal cases dealing with this issue have concluded similarly. In *Cunningham v. Lifelink Corp.*, a district court in Illinois discussed the federally subsidized housing program in a bankruptcy action. 159 B.R. 230 (N.D.Ill.1993). It noted that HUD requires a landlord to follow pertinent state eviction laws when "going about the termination and eviction process." *Id.* at 233.

> It is critical to note the distinction made in the federal regulations between an eviction of a tenant versus the termination of a lease.... Although HUD regulations state that a landlord may not *evict* a tenant except by judicial notice, the regulations make no mention of a tenant's right to judicial action prior to *termination* of the lease.

*Id.* (emphasis added).

[¶ 14.] Likewise, the Fourth Circuit Court of Appeals held in *Swann*, another rent subsidy case, "The eviction proceeding in state court must be brought, if at all, for cause. That proceeding will provide the tenant with all the process that is due. A hearing before the housing agency therefore is not constitutionally required." 675 F.2d at 1348. Key to satisfying due process in that case was a

finding of good cause. The *Swann* court noted it is important for the landlord to state the reasons for eviction: "the tenant must be informed of the reason and given an opportunity to respond." *Id.* at 1345. In analyzing the shift of the PHA out of termination and eviction decisions and the inclusion of a good cause showing by the landlord, a California district court concluded the good cause requirement was not an "onerous burden" upon the landlord, as there was a constitutionally protected property interest at stake. *Mitchell*, 569 F.Supp. at 708. Here, Canyon Lake set forth in its amended complaint specific allegations on good cause for termination.

[¶ 15.] When the new § 822.215 was adopted, HUD published an explanation. 49 FedReg 12,215–43 (1984). A "good cause category should remain open to case by case determination by the courts," 49 FedReg 12,233, and should be decided by "local landlord-tenant courts." 49 FedReg 12,234. To that end, HUD endorsed the use of state judicial proceedings "subject to the due process requirement for a fair hearing under the Fourteenth Amendment" to terminate tenancies and curtailed local PHA intervention, noting "[t]o encourage participation by private owners, it is important to minimize the procedural burden on the owners." 49 FedReg 12,235.

[¶ 16.] We conclude the federal requirements were met here. Gogue had an opportunity during the unlawful detainer hearing to dispute the landlord's good cause evidence. Only after a fair hearing did the magistrate find good cause existed to terminate Gogue's tenancy.[3] While it would have been better practice for Canyon Lake to include reasons for termination in its notices to Gogue in the first instance, due process requires only reasonable notice and an opportunity to be heard at a "meaningful time and in a mean-

---

Before the 1981 amendments to § 882.215, the PHAs possessed the sole right to give tenants their termination and eviction notices, to the exclusion of private landlords. 49 FedReg 12,234–35 (1984). However, the version of § 882.215 in effect at the time of Gogue's termination and eviction only provided that the landlord notify the PHA of its intent to terminate. 24 CFR § 882.215(c)(4) (1995). Gogue does not dispute the PHA's compliance with this rule.

**2.** Regulations on assisted tenancies no longer exist at 24 CFR § 822.215; they are now found, in part, at 24 CFR § 982.307–982.312 (1996).

**3.** Canyon Lake has not contested the circuit court's ruling that it was derelict in providing 90 days' notice for a lease termination based on renovation plans. *See* 42 U.S.C. § 1437f(c)(9) (providing at least 90 days' notice for termination of contract due to renovation-business reasons).

ingful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976)(quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965)). Gogue had that opportunity, and she presents us with no remedy she lost due to Canyon Lake's tardy assertion of grounds for termination. She was not, in fact, evicted from the apartment until many months after the first notice was served. Gogue was afforded adequate due process through the unlawful detainer hearing, where she was represented by counsel, allowed to present evidence, and able to cross-examine witnesses. *Roanoke Chowan Reg. Hous. Auth. v. Vaughan,* 81 N.C.App. 354, 344 S.E.2d 578, 582 (1986)(construing a similar public housing provision and noting the tenant was given notice of the state law proceeding, was allowed to air the dispute, and was afforded time to get counsel). We conclude Gogue was given "fundamental fairness" in the eviction process. *Lassiter v. Department of Social Services of Durham County,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

■ [¶ 17.] On the issue of whether good cause truly existed, we are bound to determine only whether the magistrate's factual findings were clearly erroneous. *Shedd, supra.* We are not definitely and firmly convinced a mistake has been made, as there was ample evidence in the record regarding Gogue's children's disruptive and loud behavior, late rental payments, police involvement in disputes surrounding the Gogue family, and neglect and misuse of the property. These incidents fall within the definition of "other good cause" as defined in 24 CFR § 822.215(c) and in Section H of the lease addendum quoted *supra,* ¶ 3. A tenant evicted for "other good cause" pursuant to § 822.215(c) must have an opportunity for "meaningful relief" in a court of law. *Gallman v. Pierce,* 639 F.Supp. 472 (N.D.Cal.1986)(finding that California eviction law provided due process pursuant a termination of assisted tenancy under § 1437f). *See also Perry v. Royal Arms Apartments,* 729 F.2d 1081, 1082 (6th Cir.1984)(finding "fundamental due process rights are afforded under the Tennessee eviction procedure so as to afford due pro-

cess protection to the tenants of this government-assisted but otherwise privately-owned and operated housing project"). As noted above, Gogue was given an opportunity for a meaningful hearing during the unlawful detainer proceedings. She argued at the magistrate and circuit court levels, as she does here, that there were explanations for all the incidents. However, we will not substitute our judgment for the magistrate's first hand determination of credibility. *Iversen v. Wall Bd. of Educ.,* 522 N.W.2d 188, 193 (S.D.1994).

[¶ 18.] Gogue's final challenge to the sufficiency of notice concerns the timing of the letters in relation to the termination date. She asserts a ninety day notice is required pursuant to 42 U.S.C. § 1437f(c)(9) when a tenancy is terminated for renovations. Two points answer Gogue's assertion: first, the circuit court found, and we concurred above, that the unlawful detainer hearing sufficed as process due Gogue, despite the notice timing problems. Second, even if renovation was the only reason for termination, Gogue's term extended many months past the supposed January 31 lease termination date, so she actually continued in possession more than ninety days after the first notice date, December 7.

■ [¶ 19.] More importantly, contrary to the provision in § 1437f(c)(9) requiring a ninety day termination notice for business reasons, no specified notice period is required on good cause terminations. Indeterminate leases under 24 CFR § 882.215(a), in effect at the time, were governed by state law notice requirements. SDCL 43–32–15 states: "A hiring of real property *for a term not specified by the parties* is deemed to be renewed as stated in § 43–32–14 [holdover tenancy created] at the end of the term implied by law *unless one of the parties gives notice to the other of his intention to terminate the same at least as long before the expiration thereof as the term of the hiring itself, not exceeding one month.*" (Emphasis added). Canyon Lake gave Gogue more than thirty days' notice, thus complying with South Dakota law. *See Cunningham,* 159 B.R. at 234 (finding a thirty day notice comports with Illinois state law

for lease terminations); *Gallman,* 639 F.Supp. at 478 (termination proceedings in assisted tenancy situations should be left to state law); *see generally German v. Federal Home Loan Mortg. Corp.,* 899 F.Supp. 1155, 1165 (S.D.N.Y.1995)(agreeing with Federal Register provisions quoted *supra* that state court proceedings are the best place to resolve termination of tenancy issues).

[¶ 20.] Gogue was given a meaningful opportunity to be heard, despite Canyon Lake's defaulted adherence to 42 U.S.C. § 1437f(d)(1)(B), requiring specific reasons for termination in the notice. As she lost no remedy due process affords, and was allowed to stay in possession of the premises until after a full hearing, we find no error in the circuit court's decision.

[¶ 21.] Affirmed.

[¶ 22.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.