2004 SD 16

**LAKOTA COMMUNITY HOMES, INC., Plaintiff and Appellee,**

v.

**Agnes RANDALL, Defendant and Appellant.**

**No. 22885.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 2004.

Decided Feb. 4, 2004.

Terri L. Williams of Gunderson, Palmer, Goodsell, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

Douglas D. Tucker of Dakota Plains Legal Services, Rapid City, South Dakota, Attorney for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] Agnes Randall leases a home with Lakota Community Homes (LCH). A member of Randall's household was charged with the offenses of minor consumption and possession of drug paraphernalia. As a result, LCH brought a forcible entry and detainer action against Randall. After a trial in magistrate court, the magistrate concluded that Randall had breached her occupancy agreement and that LCH was entitled to a judgment of eviction. On appeal to the circuit court, the decision was affirmed. Randall now raises two issues before this Court: (1) whether the trial court abused its discretion by entering judgment for LCH based on drug-related criminal activity; (2) whether the trial court erred in awarding attorney's fees in an unreasonable amount. Because the magistrate's conclusion was not clearly erroneous that sufficient grounds existed under federal regulations to evict Randall, we affirm.

## Background

[¶ 2.] In November 1998, Agnes Randall signed an occupancy agreement for a single-family home with LCH. LCH owns a federally subsidized cooperative consisting of 198 dwellings in Rapid City, South Dakota. The U.S. Department of Housing and Urban Development (HUD) subsidizes the cooperative through a Housing Assistance Payment (HAP) Contract with LCH. As a requisite for federal subsidization, HUD mandates that leases between LCH and its tenants meet certain requirements. If LCH meets the requirements, HUD pays a portion of the monthly housing charges on behalf of qualified tenants.

[¶ 3.] To meet the federal mandates, LCH requires that tenants complete and sign each year a document entitled "HAP Assistance Addendum to the Occupancy Agreement." Under the addendum, Randall listed herself and her three sons as occupants of the residence. Furthermore, Randall agreed that "persons occupying [her] household must not engage in or permit; (a) any criminal activity, including drug related criminal activity, whether in the unit or elsewhere on or near the Cooperative housing; or (b) any other unlawful activity in the unit or on the Cooperative housing area."

[¶ 4.] On May 18, 2002, Randall's son, Daryl Mesteth, age twenty, was arrested for minor consumption of alcohol and involuntarily committed to "Detox." The arrest was a result of an encounter between Mesteth and a Rapid City police officer. According to the testimony of the officer, passengers of a vehicle flagged him down. The vehicle had a broken windshield. The passengers stated that several individuals had used a baseball bat to damage the windshield. After receiving a description of the vehicle the suspects were driving, the officer spoke with a highway construction worker who had witnessed the incident. The worker told the officer that the license plate number of the vehicle carrying the vandals was "CUT 3469." Shortly after broadcasting the description of the vehicle and its license plate number, another officer stopped the vehicle. The occupants of the vehicle fled. However, the officers managed to detain two of the occupants. One of them was Daryl Mesteth.

[¶ 5.] The officer detected an odor of alcohol coming from Mesteth and noted that he appeared to be intoxicated. Mesteth admitted that he had been drinking alcoholic beverages. Randall later told the officer that her son had an alcohol abuse history. Based on Mesteth's admission and Randall's comments, the officer placed Mesteth under arrest for minor consumption of alcohol and proceeded with involun-

tarily committing him to "Detox." [1]

[¶ 6.] Mesteth was transported to the Pennington County jail where a search of his person revealed a pipe, alleged by the officer to have "smelled strongly of burnt marijuana." Mesteth was then additionally charged with possession of drug paraphernalia under SDCL 22–42A–3. The officer testified that the pipe contained a black sooty substance. However, the officer did not believe there was sufficient material in the pipe to conduct an analysis. Eventually, the ticket for possession of drug paraphernalia was dismissed.

[¶ 7.] As a result of the incident, LCH brought a forcible entry and detainer action against Randall, alleging that she had breached the terms of her Occupancy Agreement. Specifically, LCH complained that the actions of Randall's household member constituted material noncompliance with the agreement, in that Mesteth's minor consumption, possession of drug paraphernalia, and other criminal activity constituted violations of the Occupancy Agreement that disrupted the livability of the project or adversely affected the health, safety, or right of quiet enjoyment of other tenants.

[¶ 8.] The action was tried in magistrate court. The magistrate found that Mesteth engaged in criminal activity that threatened the health, safety, or right to peaceful enjoyment of the public housing premises for other residents of LCH. Specifically, the magistrate found that Mesteth was involved in intentional damage to private property, had consumed alcoholic beverage, and was in possession of drug paraphernalia at the time of his arrest. In its findings, the court also noted that before these incidents Randall had been

warned that "if another complaint was received concerning the occupants of her residence, the Board would proceed with an eviction...." The magistrate entered a final order and judgment and writ of execution for possession. After reviewing the itemized bill submitted by LCH, the magistrate awarded "necessary and reasonable" attorney's fees to LCH in the amount of $2,393.60. The circuit court affirmed. In this appeal, we consider whether the eviction order was erroneous and whether the award of attorney's fees was reasonable.

## Analysis and Decision

[¶ 9.] Statutory and contract interpretation are questions of law reviewed de novo. *State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D.1994). This Court gives no deference to the circuit court's conclusions of law. *S.B. P'ship v. Gogue,* 1997 SD 41, ¶ 8, 562 N.W.2d 754, 756 (citations omitted). Findings of fact are reviewed under the clearly erroneous standard; therefore, we will overturn fact findings only when we are definitely and firmly convinced a mistake has been made. *Id.* On the issue of whether cause for eviction existed, we are bound to determine only whether the magistrate's factual findings were clearly erroneous. *Id.* ¶ 17. "In cases where attorney's fees are statutorily authorized, the trial court's ruling is reviewed under an abuse of discretion standard." *Hoffman v. Olsen,* 2003 SD 26, ¶ 7, 658 N.W.2d 790, 792. "We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion." *City of Sioux Falls v. Johnson,*

1. While the passengers of the damaged car stated to the officer that the car from which Mesteth fled was definitely involved in the incident that led to the damaged windshield, they were unable to positively identify Mesteth as directly participating. Therefore, Mesteth was not charged in relation to that incident.

2003 SD 115, ¶ 6, 670 N.W.2d 360, 362 (citations omitted).

[¶ 10.] Randall asserts that federal regulations forbid LCH from terminating her tenancy under the circumstances presented here. She contends that "no evidence exists [that] this household committed any criminal activity, [or] that this household possessed drug paraphernalia." Alternatively, Randall asserts that even if Mesteth did possess drug paraphernalia, the possession is not a sufficient basis for termination of her tenancy. Federal regulatory language, Randall argues, allows evictions only for "serious or repeated violation of material terms of the lease." Under such an interpretation of the regulations, she reasons that the trial court erred in concluding that LCH could properly evict her from the property based on her son's conduct.

[¶ 11.] We begin by examining Randall's contention that Mesteth's actions were not a sufficient basis to terminate her tenancy. The declared policy of the United States is to "promote the goal of providing decent and affordable housing for all citizens through the efforts and encouragement of Federal, State, and local governments, and by the independent and collective actions of private citizens, organizations, and the private sector." 42 USC 1437. In furtherance of its goal to provide decent housing for all citizens, federal regulations mandate that public housing agencies offer leases that, among other things, "obligate the public housing agency to maintain the project in a decent, safe, and sanitary condition ... [and] provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other

person under the tenant's control, shall be cause for termination of tenancy." 42 USC 1437d(*l*).

[¶ 12.] The grounds under which a lease may be terminated are found in 24 CFR 966.4(*l*). Those regulations provide:

(*l*) Termination of tenancy and eviction.—

. . .

(2) Grounds for termination of tenancy. The PHA [Public Housing Agency] may terminate the tenancy only for:

. . .

(ii) Other good cause. Other good cause includes but is not limited to, the following:

(A) Criminal activity or alcohol abuse as provided in paragraph (*l*)(5) of this section;

. . .

(5) PHA termination of tenancy for criminal activity or alcohol abuse.

(i) Evicting drug criminals.

. . .

(B) Drug crime on or off the premises. The lease must provide that drug-related criminal activity engaged in on or off the premises by any tenant, member of the tenant's household or guest, and any such activity engaged in on the premises by any other person under the tenant's control, is grounds for the PHA to terminate tenancy. In addition, the lease must provide that a PHA may evict a family when the PHA determines that a household member is illegally using a drug or when the PHA determines that a pattern of illegal use of a drug interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents.

(ii) Evicting other criminals.

(A) Threat to other residents. The lease must provide that any criminal

activity by a covered person that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents (including PHA management staff residing on the premises) or threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises is grounds for termination of tenancy.

. . .

24 CFR 966.4(*l* ).

[¶ 13.] Randall argues that these regulations apply only if a family member has engaged in "drug-related criminal activity" or "violent criminal activity" as described in 24 CFR 982.553. Drug-related criminal activity is defined as "the illegal manufacture, sale, distribution, or use of a drug, or the possession of a drug with intent to manufacture, sell, distribute or use the drug." 24 CFR 5.100. Therefore, Randall argues that possession of drug paraphernalia does not fit within the regulatory scope of a drug-related criminal activity. While we agree that possession of drug paraphernalia may not precisely fit within the definition of "drug-related criminal activity," we do not agree with Randall's suggestion that the regulations prohibit termination of a lease where an individual possesses drug paraphernalia, participates in criminal activity, and demonstrates a destructive pattern of alcohol abuse.

[¶ 14.] 24 CFR 982.552(c) delineates when housing assistance may be denied or terminated. Section 982.553 of the same title specifically identifies when assistance may, or in certain cases, must be denied or terminated for criminals and alcohol abusers. For example, under section 982.553(b)(1)(ii) a PHA "*must* immediately terminate assistance for a family under the program if the PHA determines that any member of the household has ever been *convicted* of *drug-related criminal activity*

for manufacture or production of methamphetamine on the premises of federally assisted housing." (Emphasis added.) In addition, section 982.553(b)(1)(i) provides that a PHA "*must* establish standards that allow the PHA to terminate assistance for a family under the program if the PHA determines that: (A) Any household member is currently engaged in any illegal use of a drug; or (B) A pattern of illegal use of a drug by any household member interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents." (Emphasis added.) Also, a PHA "must establish standards that allow the PHA to terminate assistance under the program for a family if the PHA determines that any household member has violated the family's obligation under § 982.551 not to engage in violent criminal activity." 24 CFR 982.553(b)(2). In regards to alcohol abusers, the regulations for terminating assistance state that a PHA "must establish standards that allow termination of assistance for a family if the PHA determines that a household member's abuse or pattern of abuse of alcohol may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents." 24 CFR 982.553(b)(3).

[¶ 15.] Thus, the regulations do not limit the termination of a lease to "drug-related criminal activity." It is true that a PHA *must* terminate the lease of a family where a member of that family has been convicted of "drug-related criminal activity." However, the regulations also clearly permit a PHA to terminate a lease where the PHA determines that a family member is engaged in the illegal use of a drug, a family member has engaged in violent criminal activity, or a family member's abuse of alcohol threatens the health, safety, or right to peaceful enjoyment of the premises by other residents.

[¶ 16.] Randall next argues that no evidence existed under which LCH might have determined that Mesteth was engaged in activity warranting eviction. She argues that Mesteth was neither charged nor convicted for the possession of drug paraphernalia or the vandalism of the automobile. Therefore, she contends that the magistrate was clearly erroneous in finding that Randall violated her lease agreement "on the basis a member of her household engaged in criminal activity that threatened the health, safety, or right to peaceful enjoyment of the public housing premises by other residents;" or on the basis that her son was involved in the intentional damage to private property and had possession of drug paraphernalia.

[¶ 17.] 24 CFR 966.4($l$)(5)(iii)(A) provides that "[t]he PHA may evict the tenant by judicial action for criminal activity in accordance with this section if the PHA determines that the covered person has engaged in the criminal activity, regardless of whether the covered person has been arrested or convicted for such activity and without satisfying the standard of proof used for a criminal conviction." Similarly, § 982.553(c) provides that a PHA "may terminate assistance for criminal activity by a household member as authorized in this section if the PHA determines, based on a preponderance of the evidence, that the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity."

[¶ 18.] Under these regulations, it is not necessary for a tenant to be either charged or convicted of a criminal act. Here, evidence was presented that Mes-

teth participated in the vandalism to the automobile. LCH also presented evidence that Mesteth's alcohol abuse resulted in behavior that threatened the health, safety, and right to peaceful enjoyment of the premises by other residents. Finally, LCH presented evidence that Mesteth was engaged in the illegal use of drugs. These allegations were the basis for LCH's determination that it was prudent to evict Randall.[2] Even one of the allegations, if proven, would have been sufficient to justify eviction. *See* CFR 966.4($l$)(5) (alcohol abuse); CFR 966.4($l$)(B) (illegal use of drug); CFR 966.4($l$)(A) (criminal activity threatening right to peaceful enjoyment by other tenants). At trial, Randall presented no facts to rebut LCH's evidence that Mesteth caused or participated in vandalism, abused alcohol, and used illegal drugs. Instead, Randall relied only on the fact that Mesteth had not been charged or convicted for any of the alleged acts. Under such circumstances, we cannot say that the magistrate court abused its discretion in finding by a preponderance of the evidence that Mesteth had committed the acts alleged.

[¶ 19.] Lastly, Randall disputes the magistrate's finding that the attorney's fees request submitted by LCH was necessary and reasonable.[3] She points to several of the itemized charges submitted by LCH's counsel as duplicative, routine, or unnecessary. However, Randall has not shown that the court abused its discretion in determining that the fees were both necessary and reasonable.

[¶ 20.] Affirmed.

2. Although Randall argues that Mesteth's possession of drug paraphernalia was the sole basis of the eviction, the record demonstrates that LCH based its complaint on "minor consumption, possession of drug paraphernalia, and criminal activity."

3. Randall does not contend that LCH was not authorized to recover attorney's fees. Her sole contention is that the fees sought by LCH were unreasonable.

[¶ 21.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.