*819 KEAN, Retired Circuit Judge.
[¶ 1.] Glimeher SuperMall Venture, LLC (Glimeher) brought this action in Pennington County, South Dakota under the Uniform Fraudulent Transfer Act (UFTA), claiming that the transfer of substantially all of the assets of Black Hills Gold Factory Outlet Store, Inc. (BHG) to Coleman Company (Coleman) and Dwight Sobczak (Sobczak) was a prohibited fraudulent transfer.
FACTS AND PROCEDURE
[¶2.] In 1994 Washington SuperMall Interests, L.P. (Washington SuperMall) began the process of developing a shopping mall in Auburn, Washington, a suburb of Seattle. Washington SuperMall contacted Coleman about the prospect of Coleman opening a retail store in the mall which would sell Black Hills Gold jewelry. Coleman is a closely-held South Dakota corporation which manufactures and distributes Black Hills Gold jewelry throughout the United States and also internationally. Its corporate offices are located in Rapid City, South Dakota. Defendants Dwight Sobczak, Sr., Dwight Sobczak, Jr., Dan Sobczak, and Duane Sobczak are family members, shareholders, officers and employees of Coleman.[1]
[¶ 3.] Coleman was concerned about the liability exposure of such a venture in a new mall. Instead, BHG was formed as a new and distinct Washington corporation to operate the gift store within the mall. BHG would then sell Black Hills Gold jewelry manufactured and sold to it by Coleman. Coleman had significant control over BHG as the two corporations had nearly identical shareholders, directors and officers, along with the ownership interests. Coleman managed and supervised BHG’s financial affairs through a common retail store manager and was paid a management fee. The corporate offices of both businesses were located at the same address in Rapid City.
[¶ 4.] In July 1994 BHG entered into a lease agreement with Washington Super-Mail to begin July 15, 1995 and expiring August 31, 2002. Sobczak signed the lease as president of BHG. Because BHG was a newly formed corporation, Washington Su-perMall sought and received from Coleman a one year rent guarantee. Sobczak signed the guarantee on behalf of Coleman as its president. Sometime later, Glimeher purchased all of Washington Super-Mall’s interests in the mall and became the owner of BHG’s lease.
[¶ 5.] BHG operated the retail gift store until January 2001 when it closed the store and vacated the mall. At the time BHG vacated the premises, it had nineteen months remaining on the lease. BHG paid rent for January 2001, but failed to pay for the remaining months. In December 2000 BHG paid off $34,000 in shareholder loans to BHG. When BHG closed its store, all creditors, except for Glimeher and Coleman, were paid. In January 2001 BHG transferred $45,000 from its bank in Washington to Coleman’s account in Rapid City and also transferred approximately $225,800 in inventory to Coleman. Later the store equipment was sold and the proceeds also paid to Coleman. The equipment, inventory and cash of BHG were not subject to any security interests. Coleman claims the transfers were made in return for cancellation of an account in excess of $600,000 owed by BHG to Coleman for unpaid inventory. These transfers reduced the assets of BHG to almost noth *820 ing. BHG was administratively dissolved by the State of Washington on April 23, 2001.
[¶ 6.] Glimcher sued BHG in Washington state court for the balance due under the lease. BHG and Glimcher reached a stipulation that judgment be entered against BHG in the amount of $90,000, plus 12 percent interest. The judgment was filed December 17, 2003 in the Superi- or Court of King County, Washington.
[¶ 7.] Glimcher entered its Washington judgment against BHG as a foreign judgment in Pennington County, South Dakota on March 3, 2004. After the judgment remained unsatisfied, Glimcher initiated this action under the UFTA in January 2005. After a trial to the court on January 10, 2006, the trial court issued a memorandum opinion dated April 25, 2006, followed by findings of fact and conclusions of law incorporating the memorandum opinion. The trial court concluded that there was neither actual fraud nor constructive fraud to hinder, delay or defraud creditors. It further concluded that reasonable equivalent value was given by Coleman in exchange for the transfer of inventory and cash. Therefore, it found that the transfer was not fraudulent under the UFTA. Glimcher appeals. Finding error, we reverse.
STANDARD OF REVIEW
[¶ 8.] “In reviewing a judge’s findings in a court trial, we give no deference to conclusions of law; thus we review them under the de novo standard.” Prairie Lakes Health Care Sys., Inc. v. Wookey, 1998 SD 99, ¶ 5, 583 N.W.2d 405, 410 (citing S.B. Partnership v. Gogue, 1997 SD 41, ¶ 8, 562 N.W.2d 754, 756 (citing Central Monitoring Serv., Inc. v. Zakinski, 1996 SD 116, ¶ 17, 553 N.W.2d 513, 517)). “Conversely, we examine findings of fact under the more deferential clearly erroneous standard.” Prairie Lakes Health Care Sys., 1998 SD 99 at ¶ 5, 583 N.W.2d at 410 (citing Gogue, 1997 SD 41, ¶ 8, 562 N.W.2d at 756 (citing Shedd v. Lamb, 1996 SD 117, ¶ 17, 553 N.W.2d 241, 244)). This Court will not overturn fact findings “ ‘unless we are definitely and firmly convinced a mistake has been made.’ ” Prairie Lakes Health Care Sys., 1998 SD 99 at ¶ 5, 583 N.W.2d at 410 (quoting Cordell v. Codington Cty., 526 N.W.2d 115, 116 (S.D.1994)).
ANALYSIS AND DECISION
ISSUE ONE
The Uniform Fraudulent Transfer Act
[¶ 9.] The parties agree that this matter should be decided under Washington law. Butler Machinery Co. v. Morris Const. Co., 2004 SD 81, ¶¶ 6-7, 682 N.W.2d 773, 776-77. Both Washington and South Dakota adopted the UFTA in 1987. WashRevCodeAnn (RCWA) ch 19.40; SDCL ch 54-8A. The purpose of the UFTA is to protect a debtor’s estate from being depleted to the prejudice of the debtor’s unsecured creditors. UFTA § 3, cmt (2). “The Act invalidates ‘otherwise sanctioned transactions made with a fraudulent intent.’ ” Prairie Lakes Health Care Sys., 1998 SD 99 at ¶ 6, 583 N.W.2d at 410. Because RCWA 19.40.903 provides that “[t]his chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it[,]” case law from other jurisdictions can provide guidance in interpreting the UFTA. Sedwick v. Gwinn, 73 Wash.App. 879, 873 P.2d 528, 532 n8 (WashCtApp 1994).
A. Actual Fraudulent Intent
[¶ 10.] The UFTA analyzes transfers as actually fraudulent or constructively *821 fraudulent. RCWA 19.40.041(a)(1) provides:
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1)With actual intent to hinder, delay, or defraud any creditor of the debtor[.]
[¶ 11.] RCWA 19.40.041(b) lists objective factors which may be considered in deciding whether a transfer was made with actual intent to hinder, delay or defraud a creditor:
(b) In determining actual intent under subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
(1) The transfer or obligation was to an insider;
(2) The debtor retained possession or control of the property transferred after the transfer;
(3) The transfer or obligation was disclosed or concealed;
(4) Before the transfer was made or obligation was incurred, the debt- or had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor’s assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and,
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
[¶ 12.] These factors have been referred to as “badges of fraud.” See UFTA § 4, cmt (5). “Proof of the existence of any one or more of the factors enumerated in subsection (b) may be relevant evidence as to the debtor’s actual intent but does not create a presumption that the debtor has made a fraudulent transfer or incurred a fraudulent obligation.” Id. The debtor’s state of mind becomes the point of inquiry when considering whether a transfer was actually fraudulent. Prairie Lakes Health Care Sys., 1998 SD 99 at ¶ 7, 583 N.W.2d at 411. The debtor[2] in this case was BHG, not Coleman. Glimcher and Coleman were creditors[3] with claims.[4] While the ownership interests and corporate officers and directors are the same for both Coleman and BHG, BHG, as a Washington corporation, was a separate entity, a distinction not fully appreciated by the trial court. The trial court focused on the actions of Coleman and determined that “Coleman *822 acted without fraud or the intention to defraud anyone, and went beyond that which would have been otherwise expected of them.” However, this transfer must be evaluated from the perspective of the debt- or, BHG. The trial court’s error was compounded when it only considered some of the badges of fraud while overlooking others. Further problems arose in the conclusions reached when those badges of fraud were actually considered. This requires a review of RCWA 19.40.041(b).
a.Transfer to an insider. RCWA 19.40.041(b)(1).
[¶ 13.] The trial court found that the transfer of BHG’s assets to Coleman was to an insider[5] as the shareholders, officers and directors of both corporations are nearly identical.
The fact that a transfer has been made to a relative or to an affiliated corporation has not been regarded as a badge of fraud sufficient to warrant avoidance when unaccompanied by any other evidence of fraud. The courts have uniformly recognized, however, that a transfer to a closely related person warrants close scrutiny of the other circumstances, including the nature and extent of the consideration exchanged.
UFTA § 4, cmt (5). Close scrutiny of the facts indicates that when BHG transferred these assets, it was the Coleman owners acting as BHG owners who made the decision.
b.The transfer was disclosed or concealed. RCWA 19.40.041(b)(3).
[¶ 14.] None of the transfers were disclosed. Even though Glimcher may have noticed that BHG locked its doors at the mall, there was no indication that Glimcher had any knowledge that BHG’s assets were being moved from Washington to South Dakota. The same can be said of the proceeds from the sale of store equipment and the payoff of the stockholder loans in December 2000. Actually, Glimcher could certainly have concluded otherwise when BHG sent the January 2001 lease payment after Glimcher sent a letter concerning the remaining lease obligation.
c.Before the transfer was made, the debtor had been sued or threatened with suit. RCWA 19.40.041(b)(4).
[¶ 15.] When BHG did not pay the January 2001 rent and occupancy charges, Glimcher’s legal counsel sent a letter on January 15, 2001, reminding BHG of its lease obligations. In part the letter stated: “Failure to remit payment within ten (10) days ... shall result in the initiation of all remedies available for collection of this debt including but not limited to a suit for eviction and money judgment.” The trial court stated that, “there were no suits pending.” This badge of fraud does not require actual litigation, only the threat of litigation. The letter was the threat of litigation. That was an error by the trial court.
d.The transfer was of substantially all of the debtor’s assets. RCWA 19.40.041(b)(5).
[¶ 16.] The trial court wrote: “The transaction resulted in there being no assets whatsoever in the hands of BHG.” The court further wrote: “Coleman removed all the inventory and equipment; zeroed out the books.” Yet, having found this badge of fraud to exist, the court did not find it significant. Rather it focused upon what Coleman had done for BHG *823 during the term of the lease. The trial court’s theme was that, since Coleman had furnished inventory and other services to BHG, Glimcher was benefited through Coleman’s efforts. This decision ended with the conclusion that: “Coleman reclaimed its inventory[.]” Yet, when questioned by the court, Sobczak testified:
Q: Were there any occasions when any — let me rephrase that. You would sell Coleman’s Black Hills Gold to the Outlet (BHG)?
A: Yes, sir.
The inventory was not Coleman’s. It was owned by BHG under an open account with Coleman and Coleman had no security interest in BHG’s assets.
e.The debtor absconded. RCWA 19.40.041(b)(6).
[¶ 17.] BHG did not inform Glimcher that it was abandoning the lease and its obligations and leaving the mall. Coleman claims that mall employees found the doors closed and saw inventory being moved. While BHG’s actions were not under the cover of darkness, knowledge of the closing and where the inventory was going were kept from Glimcher which is absconding.
f.The debtor removed or concealed assets. RCWA 19.40.041(b)(7).
[¶ 18.] The trial court found no evidence concerning this badge of fraud. Yet, it is obvious that BHG, the debtor, removed assets from Washington and sent them to South Dakota and concealed the removal from Glimcher.
g.The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred. RCWA 19.40.041(b)(8).
[¶ 19.] The role of “reasonably equivalent value” in actual fraudulent intent as compared to constructive intent is not the same although the meaning of the phrase is the same. In the context of actual fraud, the absence of reasonably equivalent value is only one of the badges of fraud that courts consider in determining whether a transfer was made with fraudulent intent. Its existence is not an absolute defense when other badges exist. Thus, several badges of fraud could overcome a finding that reasonably equivalent value was given when actual fraud is considered. See, e.g., In re Spatz, 222 B.R. 157, 169 (N.D.Ill.1998)(finding that under UFTA, reasonably equivalent value relates to only one of several badges of fraud); In re Model Imperial, Inc., 250 B.R. 776, 794 (Bankr.S.D.Fla.2000)(the absence of reasonably equivalent value is only one of the badges of fraud that courts consider in determining whether a transfer was made with fraudulent intent under federal statute on which UFTA § 4(a) is modeled). However, absence of reasonably equivalent value is the essential component of constructive fraud. Unless it is proven, constructive fraud cannot be found.
[¶ 20.] We conclude that for the reasons discussed infra as this topic is reviewed when RCWA 19.40.041(a)(2) is considered, BHG did not receive a reasonably equivalent value from Coleman for the transfer. For regardless of which context the phrase is considered in, its underlying purpose is consistently the same.
[T]he proper focus is on the net effect of the transfers on the debtor’s estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.
*824 In re Jeffrey Bigelow Design Group, Inc., 956 F.2d 479, 484 (4thCir.1992). In the context of actual fraud, Glimcher was worse off because BHG’s funds to pay Glimcher were totally depleted.
h. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligations were incurred. RCWA 19.40.041(b)(9).
[¶ 21.] The trial court came to the conclusion that BHG was insolvent when the transfers were made to Coleman. “The transaction resulted in there being no assets whatsoever in the hands of BHG.” All that was left were BHG’s obligations. Thus, BHG was insolvent as its debts were greater than its assets. RCWA 19.40.021(a).
[¶ 22.] Under Washington law, proof of actual intent to defraud must be “clear and satisfactory proof.” Clearwater v. Skyline Construction Co., 67 Wash.App. 305, 835 P.2d 257, 266 (1992). Direct proof to establish an actual fraudulent intent is not required, as a debtor’s subjective intent is often difficult to discern. Rather the court “should consider all relevant particulars encompassing a questioned transaction and weigh the factors negating as well as suggesting fraud.” Prairie Lakes Health Care Sys., 1998 SD 99 at ¶ 7, 583 N.W.2d at 411.[6] “[Although the presence of one specific ‘badge’ will not be sufficient to establish fraudulent intent, the confluence of several can constitute conclusive evidence of an actual intent to defraud.” In re Model Imperial, Inc. 250 B.R. at 791 (quoting In re XYZ Options, Inc., 154 F.3d 1262, 1271 n. 17 (11thCir1998)). There are numerous other badges of fraud in the case which are sufficient to show that actual fraud occurred especially when the role of the insider is reviewed. We conclude that error was committed and the facts of this case clearly and satisfactorily demonstrate an actual intent to defraud, hinder or delay Glimcher.
B. Constructive Fraud
[¶ 23.] Glimcher also alleged that the transfer was constructively fraudulent under RCWA 19.40.041(a)(2) which provides:
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
[[Image here]]
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debt- or:
(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.
See also UFTA § 4(a)(2).
[¶ 24.] Also, RCWA 19.40.051(a) provides:
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the *825 obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
See also UFTA § 5(a). In contrast to the evidentiary burden for actual fraud, constructive fraud under the UFTA need only be shown by “substantial evidence.” Sedwick, 873 P.2d at 531 (citing Clearwater, 835 P.2d at 257).
[¶ 25.] The issue is whether BHG received a “reasonably equivalent value” for the transfer of the inventory to Coleman. Coleman alleges that the reasonable equivalent value was the forgiveness of BHG’s unsecured debt to Coleman for inventory in excess of $600,000. The trial court was distracted by the prior history between Coleman, BHG and Glimcher regarding the underlying lease agreement, guaranty under the lease and operation of the mall. However, that is not relevant to the issues in this case. BHG stipulated to the entry of judgment against it in Washington state court for the balance remaining under the lease. While Coleman’s arguments regarding promissory estoppel and equitable estoppel may have been relevant as a defense in that action, BHG chose not to defend against that judgment. The trial court believed that Coleman proceeded in “extreme good faith” in continuing to supply inventory to BHG despite the losses it suffered.[7] However, “[t]he transferee’s good faith is irrelevant to a determination of the adequacy of the consideration under this Aet[.]” UFTA, § 4, cmt (2). “The focus in ‘constructive fraud’ shifts from a subjective intent to an objective result.” Badger State Bank v. Taylor, 276 Wis.2d 312, 688 N.W.2d 439, 447 (2004). “Proof of ‘constructive fraud’ simply entails proof of the requirements of the statute.” Id. “The circuit court erred as a matter of law by focusing on the transferee’s point of view. The transferee’s subjective state of mind does not play a role in resolving the present case under [UFTA § 5(a)].” Id. at 449.
[¶ 26.] RCWA 19.40.031(a) provides:
(a) Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor’s business to furnish support to the debtor or another person.
“ Value’ is to be determined in light of the purpose of the Act to protect a debtor’s estate from being depleted to the prejudice of the debtor’s unsecured creditors. Consideration having no utility from a creditor’s viewpoint does not satisfy the statutory definition.” UFTA, § 3, cmt (2). See also Clearwater, 835 P.2d at 267. While satisfaction of an antecedent debt can satisfy the requirement of reasonably equivalent value, this Court concludes that it did not under the unique facts of this case. From the perspective of Glimcher, an *826 unsecured creditor, the cancellation of BHG’s unsecured debt owed to Coleman, an insider, when BHG was insolvent both before and after the transfer, was of no benefit to either BHG or other creditors. Clearwater, 835 P.2d at 267. The transfer of BHG’s inventory to an insider left it without any assets and resulted in it going out of business entirely.
[¶27.] This Court finds that the trial court erred as a matter of law in focusing on the transferee’s, Coleman’s, point of view. Further, this Court holds that Coleman’s satisfaction of BHG’s debt was not reasonable equivalent value under the UFTA.
ISSUE TWO
The Estoppel Issue
A. Promissory Estoppel
[¶ 28.] Coleman claims that both promissory estoppel and equitable estoppel apply which prevents Glimcher from seeking relief under the UFTA. Coleman argues that, since it had a limited obligation to pay rent under the guarantee, any judgment Glimcher has against BHG for rent cannot be enforced against it by the UFTA as this would violate the guarantee. Coleman cites RCWA 19.40.902 which allowd estoppel as a defense in UFTA proceedings. At the hearing, Sobczak testified that, if he knew that Coleman could be sued, he never would have formed BHG or had Coleman execute the guarantee. We believe the trial court erred in applying estoppel to this proceeding.
[¶ 29.] Washington recognizes both promissory estoppel and equitable estoppel. In Klinke v. Famous Recipe Fried Chicken, 94 Wash.2d 255, 616 P.2d 644, 646 n2 (Wash 1980), promissory estop-pel was defined as: “ ‘(1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only [by] enforcement of the promise.’ ” (quoting Corbit v. J.I. Case Co., 70 Wash.2d 522, 424 P.2d 290, 300 (1967)). The function of promissory estoppel is to enforce a promise made without consideration. King v. Riveland, 125 Wash.2d 500, 886 P.2d 160, 164 (1994); Elliott Bay Seafoods, Inc. v. Port of Seattle, 124 Wash.App. 5, 98 P.3d 491, 494 (2004). If there is consideration given with the promise, the agreement is the contract which is enforced. In Greaves v. Medical Imaging Systems, Inc., 124 Wash.2d 389, 879 P.2d 276, 281 (1994), the Washington Supreme Court held: The purpose of promissory estoppel is “ ‘to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee’s performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable.’ ” (emphasis added)(quoting Klinke, 616 P.2d at 648 n. 4). This case involves bargained for promises and performances which were the consideration. Glimcher’s predecessor wanted Coleman to open a store in the new mall. Coleman was reluctant to do so because the mall had no record of performance. When Coleman formed BHG, the mall owner was also reluctant to sign a lease with a new corporation. After negotiations the parties agreed that Glimcher would sign the lease with BHG, if Coleman would guarantee the lease for one year. The parties agreed and a contract was formed. Because there is a contract, promissory estoppel cannot apply. Coleman wants to extend the guarantee to cover other matters not part of the agreement and not promised. There is no lan *827 guage in the guarantee which can be construed as an exoneration of any future claims, Sobczak’s trial testimony notwithstanding. Glimcher honored the contract. It is not suing Coleman for rent. It is seeking to avoid a fraudulent transfer of BHG’s assets.
B. Equitable Estoppel
[II30.] Equitable estoppel in Washington requires: “(1) an admission, statement, or act inconsistent with a claim afterward asserted; (2) action by another in reasonable reliance on that act, statement, or admission; and (3) injury to the party who relied” upon the act, statement or admission. Berschauer/Phillips Const. Co. v. Seattle School Dist. No. 1, 124 Wash.2d 816, 881 P.2d 986, 994 (1994). We also conclude that the concept of equitable estoppel has no application to this case.
[¶ 31.] Coleman claims that it was supplying inventory to BHG and that Glimcher was thereby being enriched “through its subsidy” of BHG. Coleman goes on to argue that Glimcher was a poor manager of the mall which caused the loss of several anchor stores and these losses had an impact upon BHG’s sales. Coleman also urges that Glimcher is estopped from making any claim for rent because of events surrounding the guarantee. Somehow, Coleman believes that these facts require the application of equitable estoppel. We disagree.
[¶ 32.] Coleman’s position ignores the separate corporate identity of Glimcher, BHG and itself. It blurs the separate obligations one corporation had with another. Coleman improperly argues potential defenses BHG had for its own benefit. For example, Coleman claims Glimcher was a poor manager of the mall. If correct, this serves to benefit BHG which was the party to the lease, not Coleman. BHG could have raised this in defense of the breach of lease litigation in Washington, but did not. Instead BHG stipulated to a judgment.
[¶ 33.] Coleman’s claim for injury against Glimcher also ignores the separate corporate identities of Coleman and BHG. Coleman supplied inventory to BHG and BHG became indebted to Coleman. Glimcher was not involved with Coleman’s decisions on the quantity of inventory to supply or the amount of debt to incur with BHG on open account. Coleman could have secured its debt and chose not to do so. Based upon these facts, it is difficult to conclude that Glimcher caused any injury to Coleman.
[¶ 34.] We reverse the trial court and remand this case for proceedings consistent with RCWA 19.40.071.[8]
*828 [¶ 35.] KONENKAMP, Justice, concurs.
[¶ 36.] ZINTER, Justice, concurs in result.
[¶ 37.] GILBERTSON, Chief Justice, and MEIERHENRY, Justice, dissent.
[¶ 38.] KEAN, Retired Circuit Judge, for SABERS, Justice, disqualified.

. All of the individual defendants, except Dwight Sobczak, Sr. (Sobczak), were dismissed prior to the court trial. Coleman Company and Dwight Sobczak will be referred to collectively unless noted.

. " 'Debtor' means a person who is liable on a claim.” RCWA 19.40.011(6).

. " 'Creditor' means a person who has a claim.” RCWA 19.40.011(4).

. “ 'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.” RCWA 19.04.011(3).

. The definition of an "insider” when the debtor is a corporation includes directors, officers and persons in control of the debtor. RCWA 19.04.011(7)(ii).

. We note that the remaining holding in Prairie Lakes Health Care Sys. has no application to this appeal as that appeal involved SDCL 54-8A-5, UFTA § 5, while this appeal revolves around UFTA § 4 and its Washington counterpart.

. The trial court stated in its memorandum opinion:
Under the circumstances and recognizing that fraud is an equitable issue, equity certainly supports the premise that Coleman proceeded in extreme good faith in taking the actions which it did. Those actions were to the benefit of all of the creditors of BHG, including Glimcher, were clearly in good faith, and they were justified in taking the action they did, despite the original expectation of not being held accountable beyond the first year of operation of BHG.

. RCWA 19.40.071 provides:
(a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in RCW 19.40.081, may obtain:
(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor’s claim;
(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 6.25 RCW;
(3)Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
(i) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
(ii) Appointment of a receiver to lake charge of the asset transferred or of other property of the transferee; or
(iii) Any other relief the circumstances may require.
(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.